BARNUM AND OTHERS *vs.* LANDON AND OTHERS.

The statute [section 28, title 12th, p. 478, Ed. 1854,] which provides that whenever a suit shall be instituted against two or more defendants, to compel them to render an account, it shall be by bill in equity, has reference to cases where the defendants are sued to answer severally and not as joint baliffs or partners who have a common defense.

A declaration charging the defendants as joint baliffs of the plaintiffs of a quantity of iron ore, taken from an ore bed occupied by the plaintiffs and defendants as tenants in common; was held, after verdict for the plaintiffs, not to be insufficient in not alleging that the defendants had taken more than their share of the ore; for, however this might be in a suit brought under the statute against a co-tenant for an account, yet here the defendants must be taken to be bailiffs at common law.

Where a tenant in common is sued by his co-tenant, to compel him to account for rents and profits received by him from the common estate, it is not necessary to allege in the declaration that he has taken more than his share of the rents and profits, for the plaintiff has an interest in all the rents and profits, and the defendant is accountable for the plaintiffs' share of whatever rents and profits he has received.

Ordinarily such action will lie only after demand and at reasonable periods.

A written lease, duly executed, but not recorded, is valid to convey an interest in real estate as against a co-tenant.

The case of *French* v *Gray*, 2 Con. Rep., 92, referred to and disapproved.

A lease for a term of years by a tenant in common of his interest in the estate held in common, makes the lessee, who takes possession under the lease, and

receives the rents and profits, a co-tenant with the other tenants in common, and as such liable to account to them.

Where the defendants, who were lessees in possession of one twenty-fourth of an ore bed, had accounted to their lessor for all the ore dug by them ; it was held, that this did not discharge them from their liability to account to the other tenants in common, the lessor being entitled to only one twenty-fourth of the profits of the ore so dug, and the other tenants in common to twenty-three twenty-fourths.

Whether in such case the defendants or their lessor would be the party to account to the other tenants in common, must depend on the question of fact as to which of them was in possession, receiving the rents and profits.

Where in an action by certain tenants in common, against their co-tenants to compel them to account for rents and profits, it appeared that an undivided part of the interest of which the plaintiffs were in actual possession, claiming title, was owned at the time the suit was brought by a mortgagee, who had foreclosed, but had never taken actual possession ; it was held, that such mortgagee was not a co-tenant in possession, so as to make it necessary that he should have been joined as a plaintiff.

THIS was an action of account, brought by Milo Barnum, Leonard Richardson, and William H. Barnum, partners, doing business under the name of Barnum, Richardson and Company, against Horace Landon, Schuyler Pratt and Charles E. Botsford, as partners under the name and firm of Landon & Co. The declaration contained three counts, on the first and third of which only was a verdict rendered.

In the first count the plaintiff called upon the defendants to render their reasonable account for the time during which they were bailiffs of the plaintiffs; alleging, that, from the first day of April, 1853, until the first day of January, 1854, the defendants, as such partners, as bailiffs of the plaintiffs, had possession of twenty-three undivided twenty-fourth parts of two thousand tons of iron ore, situate in said Salisbury, of the value of five thousand dollars, which the plaintiffs, as partners aforesaid, and the defendants, as partners aforesaid, owned together as tenants in common; and the defendants, as partners aforesaid, had possession of the other one undivided twenty-fourth part of said iron ore, in their own right. And, during all that time, the defendants had the care, management, and use of said iron ore, to sell and dispose of the same for the advantage and profit of the plaintiffs and defendants, and to render a reasonable account thereof to the plaintiffs when the defendants should be thereto requested.

The third count after alleging that the defendants as bailiffs of the plaintiffs, had the possession and care of a certain ore bed as tenants in common, with the plaintiffs, was substantially like the first.

The defendants pleaded the general issue upon which the cause was tried at the term of the superior court holden in January, 1856.

On the trial among other evidence, the plaintiffs offered a lease, under which they claimed a portion of their interest in said ore and ore bed; the execution and delivery of which lease to the plaintiffs, and their occupation of said ore bed under it, were not denied; but the defendants objected to its admission, because it was not acknowledged and recorded. The defendants did not claim that they were injured or affected by said omission to record, nor did they claim any interest under any of the lessors; but they insisted that the lease was a nullity unless recorded. The plaintiffs insisted, that as against the defendants it was good as a lease and a license; and, as connected with their possession, was admissible to support the averments in the declaration. The court admitted the lease, and it was read to the jury.

To prove that the defendants were tenants in common with the plaintiffs, as alleged, the plaintiffs offered in evidence a lease from Forbes Munson to the defendants, which was as follows:

Know all persons that I, Forbes Munson, of Canaan, in consideration of the agreement of Horace Landon, Schuyler Pratt, and Charles E. Botsford, of Salisbury, dealers in company, by the name of Landon & Co., do demise, lease, and to farm let, to said Landon, Pratt, and Botsford, the one undivided one-fourth part of one-sixth part of that certain ore bed, situate in said Salisbury, called the *Davis Ore Bed*, of which Samuel Forbes, late of Canaan, deceased, died seized; to have and to hold the same for the period of two years, from the first day of April next. And the said lessess shall have the right, in the same and as ample manner as I the said lessor have, to enter upon said premises and take ore therefrom, and may during said term, dig and carry away

from said bed, all such quantities of ore as they may find convenient, under my right, exercising said right in a prudent manner, according to the usages of digging ore in said Salisbury. But said lessess shall not underlet, and are to surrender up said premises at the expiration of said two years.

And the said Landon, Pratt and Botsford, in consideration of the premises, agree to commence digging on said right sometime in April next, being first put into possession of the same by said lessor, and to use all proper and reasonable means, to raise at least one thousand tons of ore from said bed, each of said years, provided they may have the lawful right to do so, under this lease; and for all the ore obtained at said bed under this lease during the first year, said lessess agree to pay said lessor, the sum of fifty cents per ton, provided the quantity so obtained shall amount to one thousand or more; but if it shall fall short of one thousand tons, then they agree to pay seventy-five cents per ton, for the quantity so obtained the first year. And they also agree to pay the like sum of fifty cents per ton, for the quantity obtained the second year, provided the same shall amount to one thousand tons or more; but if the quantity so obtained the second year, shall fall short of one thousand tons, they agree to pay the like sum of seventy-five cents per ton, for the quantity obtained the second year,—payments to be made at the end of each year. And said lessees agree to use reasonable means and diligence, to obtain at least the quantity of ore from said bed above named, and, in case they shall omit to use such diligence, this lease shall be void, and said Munson may re-enter and take possession of said premises. And it is agreed that said lessees may from time to time, require the directions and instructions of said lessor, as to the use and occupancy of said premises. And if they follow the directions of said lessor, and shall thereby be subjected to any law-suit or costs of litigation, said lessor shall pay and bear all expense thereof. And it is also agreed, that said lessees shall commence digging ore on said right, under this lease, during the month of April next, as aforesaid; and continue

to exercise said right, in the manner before specified, unless hindered or obstructed in such manner as to make it unprofitable for them to pursue said business; in which last named case, said lessees may abandon and surrender this lease to said lessor, paying him according to the terms of this lease, for all the ore taken from said bed.

In witness whereof, &c.

The defendants objected to the reception of this lease, claiming it to be merely a license, and that it did not prove that the defendants were co-tenants with the plaintiffs, but that the defendants, under it, were mere servants, and that said Munson was co-tenant with the plaintiffs of the 1-24th part. It was proved, that the defendants were put into possession of the said 1-24th part of said ore bed upon the execution of said lease by Munson, and that the defendants had ever since enjoyed said right upon the terms of said lease. The court overruled the objection, and the lease was read; and it was held by the court to be a proper lease, vesting a definite interest in the defendants, and that thereby, and with actual enjoyment and possession by the defendants, they were not mere servants of said Munson, but might become and were co-tenants with the plaintiffs.

It was proved that the manner of using said ore bed had ever been, for the lessees and owners to dig ore annually, and to pay the agreed rent in cash in January, each one receiving his own share; and that rent was paid, for said 23-24th parts so occupied by the plaintiffs, for the year 1853, to one Adams—that said use of said bed was the usual and only use to which it could be put—that during that year the defendants did not, but the plaintiffs only, did dig ore in said bed, and raised and placed at the mouth of the pit, in a pile, some 10,000 tons, of which the defendants took and carried away about 1,400 tons, and more than their 1-24th part of said pile, insisting that the ore belonged to them as tenants in common with the plaintiffs. The plaintiffs did not deny the right of the defendants, but insisted that they must account for it, and pay for what they had taken beyond their share. The defendants insisted that it did not appear that

the 1,400 tons so taken by them, was more than their 1-24th part of their interest in the entire ore bed which they held under their lease from said Munson, being some five acres in extent; and hence they claimed, and asked the court to instruct the jury that the defendants could not be required to account. The court did not so instruct them.

It was proved that in the year 1842, Thos. Fenn, received of one Joclyn, a mortgage deed of a small interest in said ore bed, viz.: 1-4th of 1-5th of 1-6th, which was then owned by said Joclyn; after which the plaintiffs purchased of said Joclyn, or her legal assigns, all her interest as mortgagor in said portion. The said mortgagee did not take possession of the interest so mortgaged, nor do anything about the same, until in 1852, when he obtained a foreclosure. The plaintiffs insisted that said Fenn had never taken possession, but had left his mortgagor, and the plaintiffs, as her assigns, in possession, and that they had for years previous to, and down to, the date of the writ, and since, held possession of, and used as their own, all the rights in said ore bed, except the 1-24th part vested in the defendants, by their lease from said Forbes Munson. The defendants insisted, notwithstanding the facts claimed aforesaid, that said Fenn was, during all the time, from the 1st day of April, 1853, to the 1st day of January, 1854, a co-tenant in the use of said ore bed, and, as such, was interested in all the ore dug during said time, and should have been joined as a plaintiff in the case. The court held that all who were co-tenants must unite; but that the question was, who were the real co-tenants during said time, viz.: from 1st April to 1st January—that a mere mortgagee of an interest in such ore bed, whether before or after foreclosure, who had done nothing towards taking possession, but left the mortgagor and her assigns in possession, was not a co-tenant in the use of said ore bed. And the facts in relation thereto were left to the jury.

The defendants further claimed that they had, for their use of said ore bed, under their said lease from said Munson, paid him according to the terms of the lease, and, therefore, could

not be obliged to account with the plaintiffs. The court held that the real co-tenants, who, as such, took the ore during the time in question, must account among themselves; and that if the defendants paid their lessor, yet they must still account with their co-tenants for all they had got beyond their own proportional share.

The plaintiffs offered evidence to prove, that in January, 1854, they paid to one Adams, of Salisbury, the rent of the entire ore bed, for the whole year 1853, during which the plaintiffs occupied it under said lease to them, including said interest mortgaged to Fenn, but not including the said 1-24th part occupied by the defendants. That for some years before 1853, the plaintiffs had occupied said 23-24th parts as during said year 1853, and paid said annual rent to Adams, who had acted, and still continued to act, as agent to receive said rent for all the owners, except the defendants; that in June, 1854, said Adams paid to Fenn, the amount of his interest in the rent of said ore bed for 1853, as expressed in said lease, and Fenn received the same from Adams in said character. The plaintiffs claimed that this reception of rent by Fenn, tended to prove that the plaintiffs had occupied said 23-24th parts as lessors or owners in their own right, and had paid therefor, and that it tended to prove other matters alleged in the declaration. The defendants objected to it, because the receipt of said money by Fenn, through said Adams, was subsequent to the date of the plaintiffs' writ. The court overruled this objection, and the evidence was received.

It was proved that the defendants had taken from a pile of ore, dug by the plaintiffs as lessees as aforesaid, in 1853, 1,400 tons of ore which they had disposed of by using it in their own furnace, and not otherwise. The defendants objected to this evidence, as not conducing to prove the declaration. The court overruled the objection, and admitted the evidence.

The jury returned a verdict that the defendants should account. The defendants thereupon moved for a new trial.

They also moved in arrest of judgment on the ground of the insufficiency of the declaration.

*J. H. Hubbard, Granger* and *Russell*, in support of the motion.

1. The declaration is insufficient, because it does not aver, that the defendants have received, used, or taken the benefits of the common property, in greater proportion than their interests in the principal estate. A declaration is always bad when it does not show all the grounds necessary to a final recovery on the part of the plaintiff. 10 S. & R., 221.

The defendants have a right to take ore from the ore bed in common with the plaintiffs, and are not liable to account, until they get more than their share of the common property. If they would be, they might be sued for the first load drawn from the bed. Rev. Stat. tit. 1, Ch. 15, § 207.

By the plain words of the statute, the defendants are not liable, unless they have taken the benefit of the property in greater proportion than their interest in the principal estate. 1 Bac. Abr., 32. 3 Hill, 59, 70, 71.

The declaration is also bad because it shows that five persons hold the estate, instead of two. Partners always hold as joint tenants, or tenants in common.

2. The unacknowledged, and unrecorded lease to the plaintiffs, was not evidence to prove their title and ownership, as set up in their declaration. The averment is, that the plaintiffs and defendants are owners of the ore and ore bed as tenants in common ; and, of course, in such manner that the plaintiffs could maintain account against the defendants. A license to work in the bed and take ore therefrom, and account to the lessors at a specific rate per ton, for every ton taken away, does not authorize the plaintiffs to maintain account against the defendants, for other ore taken by the defendants on Munson's rights.

The plaintiffs have not the whole interest of the lessors.

3. The lease from Munson to the defendants does not dissever his interest in the rents and profits of the ore and ore bed, from the interests of the plaintiffs and their lessors, and

he should have been made a party. It authorizes the defendants to work and improve the mine, and to take ore therefrom under the direction of Munson; and they are to pay him fifty cents per ton, for every ton they take from the bed. If Munson has received more than his share of the rents and profits of the principal estate, he is liable to account to the plaintiffs and their lessors. He ownes the whole of an undivided share, and the lessors of the plaintiff could not, by their lease, affect his interest. Upon every principle he should have been made a party.

4. The court erred in not instructing the jury that the defendants could not be required to account for ore, which they had taken under the admitted claim that it belonged to them as tenants in common, unless they had taken benefit of, received, or used said estate, in greater proportion than the amount of their interest in the principal estate. The motion finds that the defendants took the ore in their own right, as tenants in common of the *ore bed.* It is obvious that the ore bed is the principal estate. The whole quantity of ore, covered and uncovered, is the principal estate.

5. The defendants claimed that they had paid Munson for their use of the ore-bed, under his lease to them, and could not be obliged to account with the plaintiffs; and the court erred in not instructing the jury on this point, as they requested.

Tenants in common must join in all personal actions where the profits of the land, or some indivisible thing is in question, or for rent; and, where common property is leased, the rent may be paid to one tenant in common, and his release will be a bar to the rest. 1 Sw. Dig., 108. 13 Johns, 286. 1 Bac. Abr., 32.

6. The plaintiffs, to prove that they were the lessees of Fenn, from the 1st of April, 1853, to the first of April, 1854, offered to prove that in June, 1854, four months subsequently to the commencement of the present action, said Fenn accepted 40 dollars, as the amount of his interest in the rent of the ore-bed for 1853. To this evidence the defendants

objected; but the court admitted it for the purpose for which it was offered, and for other purposes.

In a suit between the plaintiffs and Fenn, the acts and declarations of the latter, as to the reception of rent, would be evidence in favor of the plaintiffs to prove the relationship of landlord and tenant. But Fenn is not a party; and to sanction the ruling upon the circuit, would be to encourage a plaintiff to collude with a stranger and make evidence for himself, after the commencement of a contest in a court of justice. Even the acts and declarations of deceased persons, as to boundaries and customs, made *post litem motam*, are not admissible. Phil. Ev., 183. It is mere hearsay. A lease from Fenn, executed four months after the commencement of the suit, would not have been admissible.

7. A copartnership can not be a tenant in common. It is not a person, within the meaning of the statute. Two copartnerships are not two persons, under the statute relating to the action of account between tenants in common. Rev. Stat., 122.

*Woodruff, Warren* and *Peet,* against the motion.

1. The counts in the declaration are in accordance with the common forms of declaring in similar cases in this state. 2 Sw. Dig., 454, 455. 1 Day, 263. 16 Conn. R., 332, 340.

2. The counts are good at common law, charging the defendants as bailiffs, and as bailiffs by appointment. Co. Lit., 172. 1 Sw. Dig., 579. 16 Conn. R., 341, 342.

3. But the counts are good even under the statute. Rev. Stat., 108. It is not necessary to aver that one co-tenant has taken more than his proportion of the common property. If it is necessary to aver it, it is necessary to prove it, thus submitting the state of the account to the jury.

The mere relation of the parties, gives the right to the action. The right to recover depends on the auditor's finding that the defendant has received more than his share.

But if such averment is necessary, it is in substance averred that the defendants had used more than their share, *viz.*, the whole.

4. If the averments are defective, they are cured by the verdict. *Hendrick* v. *Seeley,* 6 Conn. R., 176. *Dale* v. *Dean,* 16 Conn. R., 579.

5. The lease to the plaintiffs was admissible, though not recorded. A parol lease or license, executed, gives the lessee a good title to the products. It is evidence of a license to occupy and use according to its terms. 1 Sw. Dig., 131, 132. 8 Conn. R., 226. It is good against the lessors and their heirs, being in writing, and bad only against those claiming title. Statute Title 29, section 14. 7 Conn. R., 121. 2. The lease from Munson was admissible to prove that the defendants were co-tenants with the plaintiffs. It has the operative words of a lease—" demise, lease, and to farm let." And the words used are proper to convey all Munson's interest to the defendants for two years. 3. The action is brought to compel the defendants to account for the ore they have taken,—not to account for the use of the bed. 4. A mortgagee has no right to the rents and profits until he obtain possession. The mortgagor and his assigns in possession are entitled to the rents and profits. They are tenants and may call their co-tenants to account. *Lacon* v. *Davenport*, 16 Conn. R., 340. The question was properly submitted to the jury to ascertain who were in possession. 5. If the plaintiffs and defendants were co-tenants, they must account to each other. It is no answer for the defendants to say that they have paid their grantor. The issue was whether the defendants were bailiffs; not, have they fully accounted.

6. The reception of rent at any time tends to prove a lease to the party, of whom it is received. It is in the nature of an acknowledgment of the relation of landlord and tenant. The evidence was therefore admissible.

ELLSWORTH, J. The motion in arrest is placed on two grounds, First, the want of jurisdiction in the court, and

Barnum and others *v*. Landon and others.

second, the insufficiency of the allegations in the declaration. As to the first, it is said, our statute requires, that " whenever an action shall be instituted against two or more defendants, to compel them to render an account, it shall be by bill in equity," Rev. Stat., 478, and as there are here three defendants, the plaintiffs have mistaken their remedy, which was in equity, and not at law. This objection proceeds upon an entire misapprehension of the statute. The statute has reference to cases where the defendants are sued to answer severally, each one upon his own individual responsibility, and not as joint bailiffs or partners, where the defence is one and the same, and the defendants strictly but one defendant. What has this action, or what have these plaintiffs to do with the relations of the defendants among themselves ? That matter has no bearing upon the joint duty of the defendants to account with the plaintiffs for what they have taken as joint bailiffs or partners, of the use and profits of this ore bed, beyond their proportion of one twenty-fourth part. If the plaintiffs are obliged to go beyond their own claim on all the defendants, and to bring in here for adjustment matters about which they care nothing, the relations of the defendants among themselves, the plaintiffs can never recover in this court or any other. As we have said, the liability to account is joint, and each defendant can avail himself of whatever goes to save himself or the other defendants, from the cause of action stated in the plaintiffs' declaration. To go beyond this would be irregular and absurd.

As to the objection, that it is not stated in the declaration, that the defendants have taken, as tenants in common of the ore bed, more than the amount of their interest, (one twenty-fourth part) in the principal estate, we think it entirely groundless. Cases have been cited, to show that such an averment is necessary where the action is brought on the statute which gives a tenant in common an action of account against his co-tenant. However this may be in the cases cited, which we are not called to consider, there is no

propriety in urging it here, especially as the objection arises after verdict, for in the counts on which there is a verdict for the plaintiffs, the defendants are sued as *bailiffs* of the plaintiffs, of a certain quantity of ore. Now, a bailiff is defined to be "a servant that has the administration and charge of lands, goods and chattels, to make the best benefit for the owner, against whom an action of account lies, for the profits which he has raised or made, or might by his industry or care have raised or made." Co. Lit., 172. This allegation is found to be true by the verdict, and therefore the defendants have no right to say, that they are not bailiffs at common law, and are not called to account as such.

We come now to consider the supposed errors in the charge of the judge. The plaintiffs, in order to prove their title to their twenty-three parts of the ore taken by the defendants, and their title to the ore bed itself, (the whole being twenty-four parts) offered in evidence a lease, for four years from the 1st of January, 1851, of most of their interest, from persons admitted to be owners of the estate, conveying to the plaintiffs the ore bed for the four years. The lease was in due form of law, and in all respects complete and perfect, except only that it had not been recorded in the town records of Salisbury, the town in which the ore bed lay. This was the only objection to the lease. The defendants insisted that it was by the statute declared to be absolutely void, except as to the lessors; not that they claimed anything themselves under the plaintiffs' lessors, or were deceived or in any way injured, by reason of the lease, but it was not recorded and therefore an imperfect and void instrument. Our answer to this is, the instrument was not imperfect and void. It had every legal requisite of a conveyance, and if a legal and perfect instrument between the parties, what have the defendants to say against it, when the plaintiffs come forward to assert their rights under it, rights which none but creditors and purchasers can properly deny or resist? Recording is no part of the conveyance itself, and to allow a stranger who has no manner of interest in the question, to set up a statute, which requires deeds and leases to be re-

corded, merely to give public notice, that creditors and bona
fide purchasers may not be deceived and cheated, is unrea-
sonable and preposterous. A majority of the judges in the
case of *French* v. *Gray*, 2 Conn. R., 92, held this extraordi-
nary doctrine, but that decision has never been satisfactory
to the profession, and at the time it was made, it was
opposed by some of the ablest members of the court; Swift,
Ch. J., Goddard, Hosmer, and Gould, Justices.

Again, it is said that the defendants were not occupying
the ore bed as co-tenants with the plaintiffs, or in their own
personal right, but as the mere servants or licencees of Forbes
Munson, and that the plaintiffs should have sued him as the
real co-tenant in the possession and enjoyment of the rents
and profits. Not so. In March, 1853, the defendants took
a lease from said Munson, of all his interest and right to dig
in said ore bed, for the next two years, and were put into
possession of said share in their own right. The lease was
most full and formal in its language, and was a complete
transfer of the interest of the lessor to the lessees. It
follows from this, that the defendants were the co-tenants
of the plaintiffs, and liable to account for the rents and
profits.

Again, it is said that the court should have charged the jury,
that the plaintiffs could not call upon the defendants to ren-
der their account, unless they proved that the defendants had
taken more than one twenty-fourth part of the entire ore bed.
If this were true, it would destroy the value of this bed, and
of such joint property as this, every where; for in effect, the
smallest interest in one tenant would thereby be as available
and as valuable as the greatest interest in another. This
bed embraces some five acres of land, and how deep the ore
extends, and what is its quality and productiveness, no man
can know, and if no co-tenant can be called upon to account
for what he obtains more than his share, until all this ore bed
is exhausted, there will be no accounting at all, and one twenty-
fourth part as we have said, would be as good as the other
twenty-three parts. The error of the defendants lies in this;
they contend that they own absolutely whatever they get out

of the ore bed, if it is not too much, whereas they own only one twenty-fourth part of what they get out, and must account, at reasonable times, for the other twenty-three parts, to the plaintiffs; and the objection that this will subject them to account from day to day, and for each load or pound of ore, is equally applicable to all bailiffs and receivers, where the property taken, is taken in parts or parcels, as where one tenant takes from day to day the entire use and profits of a farm or of a wood lot. Whenever the relation exists, it gives rise of necessity, to a liability to account, but an action will not lie ordinarily, until after demand, and then only at reasonable periods. In most cases the parties who severally occupy property owned by a joint title, as an ore bed, quarry, &c., find it necessary to enter into some mutual arrangement, for the use and occupancy of it; or where each digs and carries away at his own pleasure the soil or ore, for the time of reckoning with each other, and adjusting balances either annually or oftener, if circumstances require it; just as had always been done with this ore bed, until the defendants took their lease of a very small interest from said Munson; and if now the defendants will not come into any proper arrangement for the enjoyment of this ore bed, the law will hold them liable to account at reasonable times, for whatever use they make of the common property for their exclusive benefit. Besides the record shows, that in the present case, the manner of enjoying this ore bed had ever been, for the owners or lessees of the shares, respectively, to pay a premium per ton, on the first of every year, into a common treasury, which sum was divided among the owners according to the number of shares owned by them, and that *such use and enjoyment of said ore bed, was the only and usual use and enjoyment to which it could be put.* It is a convenient time for accounting, and the usual practice we believe, for joint owners of real estate, to reckon the annual rents and profits, at annual periods or times, and this rule is a very fair and reasonable one in reckoning and dividing the rents and profits of ore beds, quarries, fisheries and the like. This

question however, was passed over by the judge in his charge, because, it may be presumed he could not, according to his view of the law, charge in favor of the defendants; but further, it is not certain that the question necessarily arose in the view of the judge, for if the defendants were bailiffs of certain ore already dug by the plaintiffs, the plaintiffs' claim to that, did not of necessity depend upon a solution of the question, at what time and in what manner the joint owners of an ore bed should render their accounts for their enjoyment of it in severalty.

It is further claimed, that the defendants had already accounted to their lessor, Forbes Munson, for all the ore they had taken and carried away from the plaintiffs' pile of some ten thousand tons, and that they could not be obliged to account for the same a second time.    Whether the defendants had paid Forbes Munson, any more money than the purchase price they agreed to give him for his right to dig, being one twenty-fourth part, does not appear from the case; this of course they were bound to pay him; but if they have paid him for more than the one twenty-fourth part entitled him to, they have paid him in their own wrong, for this was all which said Munson owned or claimed to own, and his tenants could acquire nothing more than he had a right to give. The question, whether the defendants must account as co-tenants, depends upon the question whether the defendants or Munson were in fact in possession of that one twenty-fourth part.    The plaintiffs were in possession of twenty-three twenty-fourth parts and if Munson had leased his share to the defendants and they had taken possession of that share, the defendants were co-tenants with the plaintiffs, and Munson was not a co-tenant, and so the defendants were the proper persons and the only persons to be sued. The money which the defendants paid Munson, whether it was a gross sum, or so much per ton, was for a different purpose than to pay for common profits which were to be divided among the owners of the ore bed for the year in question according to their respective interests.    Everything

turned on the question who were in possession—who received the rents and profits that year. So the judge left it to the jury.

There is nothing in the objection that Fenn was a co-tenant of the plaintiffs for 1853, and should have been joined with them in this suit. The judge decided correctly, that if he was as claimed a co-tenant in 1853, he must have been joined or the action would fail. So that every thing turned on the matter of fact. Was he in possession ? The jury found that he was not, and on the facts conceded they must have so found or a new trial would have been awarded. It appears that in 1842, Fenn had a title as mortgagee to a certain small interest in said ore bed—that the plaintiffs had become the owners or lessees of the equity of redemption of that interest, and as such owners or lessees had for years been in the possession and enjoyment of that interest, and indeed of the entire ore bed, except in 1853, of the said twenty-fourth part belonging to said Munson. In 1852, Fenn foreclosed his mortgage but did not take possession of his interest, nor interfere with the plaintiffs' possession and enjoyment. Under the charge, the jury found, that in 1853, Fenn was not in possession, but that the plaintiffs were, and were exclusively taking the rents and profits. Now, upon these facts, it is impossible to hold, that Fenn was a co-tenant in possession; he had a certain legal right and that is all, and he could neither sue nor be sued on that account.

Nor was the testimony of Fenn's receiving money in January, 1854, for his share of the rent for 1853, in any way objectionable. It is said it was received after the commencement of this action. So it was by Fenn, but not by Mr. Adams who professedly acted as his agent in the matter. Adams received it from the plaintiffs in January, before the suit was commenced, at which time they paid him as the common treasurer of all the share-holders in this ore bed, the annual rent, as had been the practice for many years before. Besides the evidence conduced to show the character of

Fenn's relation to this property, and that Adams was his agent in leasing or controling the property.

We advise that the declaration is sufficient and that there be no new trial.

In this opinion, the other judges, Storrs and Hinman, concurred.

Declaration sufficient, new trial not to be granted.