LAMB v. WARD.

---

P. J. LAMB, Administratrix of Elihu Meredith, v. S. H. WARD, Administrator of Uriah Lamb.

*Action by Principal Against Agent—Pleading—Practice—Demand, when unnecessary—Statute of Limitations—Evidence—Witness.*

1. Where, in an action by a principal against an agent for money due by the latter, the complaint does not allege a demand and refusal, a demurrer on that ground will not lie when in the answer, which contains the demurrer, a general denial of indebtedness is made and the statute of limitations pleaded.

2. Where a witness for plaintiff stated that the defendant's intestate had received money from plaintiff to manage for her it was not competent to ask him, on cross-examination, if he (the witness) had not stated to others that the money had been repaid; and, on the denial by witness of such statement, to prove that he had made

it, for, the evident purpose of defendant (upon whom the burden of proving payment rested) being to prove such payment by the witness, the defendant made the latter, in some'degree, *his* witness and was bound by his answer to the question.

3. Notes of defendant's intestate in his handwriting and payable to the plaintiff, found among the papers of the former, were not admissible to show payment to plaintiff, there being no evidence that they were ever in the possession of the latter.

4. Where it appeared that defendant's intestate received money from the plaintiff agreeing to manage and lend it out for her and return it to her with six per cent. interest, and keep all that'he got over six per cent. for his trouble as her agent, it was proper to charge the jury that if they found that the money was so received by defendant's intestate the agency existed, and the defendant's intestate was responsible for the funds and that the statute of limitations would not run until after demand.

CIVIL ACTION, tried before *Brown, J.,* and a jury, at August Term, 1893, of GUILFORD Superior Court.

The facts appear in the opinion of Associate Justice BURWELL.

From a judgment for plaintiff defendant appealed.

*Mr. John A. Barringer,* for plaintiff.
*Mr. James E. Boyd,* for defendant (appellant).

BURWELL, J.: The plaintiff, administratrix of Elihu Meredith, seeks in this action to recover of the defendant administrator of Uriah Lamb $800, which she alleges in her complaint she had put in the hands of his intestate to hold and account for as her agent under an agreement between him and her.

The complaint contained no allegation of any demand for an account and settlement either upon the defendant or his intestate.

The answer of the defendant set up three separate defences: 1. That the facts set out in the complaint do not con-

stitute a cause of action, there being therein no averment of demand and refusal; 2. A denial of each allegation of the complaint; 3. The statute of limitations. His Honor overruled the first defence or demurrer, and the defendant excepted.

In *Wiley* v. *Logan*, 95 N. C., 358, it is said: "A demand previous to bringing an action for money collected by an agent is to enable the latter to pay over without incurring the cost of suit, for the principal must seek him and not he the principal. But a demand is not required where the agency is denied or a claim set up exceeding the amount collected, or the agent's responsibility is disputed in the answer. *Waddell* v. *Swan*, 91 N. C., 108, and cases cited."

The principle thus announced fully sustains the ruling excepted to. The whole answer was to be considered by the Court in passing upon the question. It would have been an idle thing to hold the plaintiff to the necessity of alleging and proving a demand that the answer itself showed was not required, according to the authority quoted above, and thus, for no good purpose whatever, postpone the trial of the substantial issues of the cause shown by the pleadings.

*Second and Third Exceptions.*—The plaintiff's husband, Shubal Lamb, upon his direct examination, testified to facts that tended to show that the defendant's intestate, his father, had received from the plaintiff administratrix the sum of money which she alleged in her complaint she had entrusted to him, and that he had agreed to manage the fund as her agent.

Upon his cross-examination he was asked if he had not told one Rush and also one Dundas, at times and places called to his attention, that his father had paid back to the plaintiff all the " Meredith money," meaning the money

sued for here. He denied making such a statement to either of the persons named.

The defendant offered to show by those persons that this witness had made to each of them such a statement, but not in the presence of the plaintiff. This testimony was excluded, as it should have been. It was clearly incompetent for the defendant to establish the fact that payment of the sum demanded, or any part of it, had been made, by the unsworn statement of any one, whether plaintiff's witness or not. It was argued before us that it was competent "thus to contradict the testimony of the witness, Shubal Lamb, by his own previous statements, and thus impeach him." The reply to this is that the alleged previous statement would not be contradictory of the witness's evidence so far as that evidence related to those facts which it was incumbent on the plaintiff to prove. She sought to establish by his testimony that the defendant's intestate had received her money, and that he had received it as her agent. There is no inconsistency or contradiction between these two facts and the alleged statement. Indeed the statement, if truthfully made, would seem to pre-suppose the existence of one or both of these facts, for there would of course be no repayment of money unless it had been received for the plaintiff. The burden of proving payment, if the indebtedness was established, rested upon the defendant. It seems very patent that he sought to prove this fact by the witness. Using him for this purpose, he made him in some degree his witness, and is bound by his answer upon this question. He said that he knew nothing of any payment having been made. This, in answer to defendant's questioning, and under oath. Suppose he had made statements, not under oath, contradictory of this. That would not tend to show the payment had been in fact made. Suppose he had not uttered such statement, there

LAMB *v.* WARD.

would still be no proof of payment. What was proposed could, therefore, in no event aid the defendant. The credibility of a party's witness may be generally sustained or attacked by proof of his "general character." His evidence upon any particular matter may be impeached by evidence that upon another occasion he made a different statement about the same particular matter. Neither of these rules applies here.

*Fourth and Fifth Exceptions.*—The defendant offered in evidence two notes, one for $100, dated September 27, 1884, and one for $250, dated October 1, 1884, and testified that he found them among his intestate's papers after his death. They were both wholly in his handwriting and were payable to P. J. Lamb, one day after date. To the former was the signature of his intestate. From the latter that signature had been torn.

These papers seem to have been offered in order to show that the defendant's intestate had paid to plaintiff the sum of money named therein. We can see no reason whatever for admitting them for that purpose, there being no evidence that they were ever in the plaintiff's possession or that she ever knew of their existence. The defendant's counsel, feeling the necessity of showing the jury that the plaintiff had once held these notes, produced the following order:

"MRS. J. P. LAMB :—Please send me order for one hundred dollars, ready filled up, payable to S. H. Ward, to the National Bank of Greensboro, N. C., and I will be responsible to you.

"September 27, 1884.        (Signed)        UH. LAMB."

And he testified that the same was signed by Uriah Lamb: that he (witness) borrowed one hundred dollars and

that Uriah Lamb gave him the foregoing order, and that he delivered it to the plaintiff and she gave him a check on the bank for the money; that he left the order with the plaintiff, and that after he administered he found it among Uriah Lamb's papers; that he gave his note to Uriah Lamb for the amount and repaid it and took up his note in Uriah's life-time. The above paper was admitted.

We see in this evidence nothing that can obviate the objection to the admission of either of the notes. The fact still remains that each of them is merely a written statement of the defendant's intestate, of which, so far as the evidence shows, the plaintiff had no knowledge. While it is true that from the existence of this paper, as discovered by the defendant, it might be conjectured that they once belonged to the plaintiff and had been paid, it is not allowable to submit to a jury facts that lay the foundation merely for a conjecture that the fact in controversy is true. There must be a recognized connection between the fact proved and the fact to be inferred, or the former is irrelevant. Besides, to admit such evidence as this would be to open a door for fraud.

*Sixth Exception.*—To show that the defendant's intestate had received her money as agent, and thus escape the effect of the plea of the statute of limitations, the plaintiff offered the testimony of her husband, Shubal Lamb, who testified that "he (defendant's intestate) said he would agree to pay her six per cent. on the money and return it to her and manage it as her agent and lend it out for her, and save her harmless, and that all he got over six per cent. he would keep for his trouble for acting as her agent."

The case recites that "At the close of the testimony defendant's counsel asked the Court, in writing, to charge the jury 'that according to the specific terms of the agreement made on the 29th of August, 1884, as testified to by Shubal

Lamb, Uriah Lamb, the intestate of the plaintiff, was not an agent of plaintiff, but borrowed and took the use of her money, to be repaid to her at six per cent. interest, and that the statute of limitations began to run from the time the money went into his hands, the last being shown to have gone into his hands September 29, 1884. This suit being brought since Uriah Lamb died in 1891, then, as a matter of law, more than three years having elapsed, the plaintiff's action is barred.'"

The Court did not give the instructions requested, but charged the jury as follows:

"The statute of limitations would begin to run against this debt if it was a loan by plaintiff to Uriah Lamb; that if the jury believe that a contract was entered into between the plaintiff and Uriah Lamb whereby the money was loaned to Uriah Lamb and he contracted to repay the principal and six per cent. interest, then the statute would run in this case and this action would be barred and the jury should answer the second issue, Yes."

The Court recited all the evidence upon this issue and said, "that if it was not a loan, but was placed in Uriah Lamb's hands as agent of the plaintiff, managing her money and lending it out for her, it would constitute a trust fund in the hands of Uriah Lamb and the statute would not run except from a demand, and there is no evidence of a demand more than three years before this action was commenced, and if the jury should so find that it was a trust fund placed in Uriah Lamb's hands to lend out and manage for plaintiff it would not be barred."

We think the defendant would have had no good cause for exception if his Honor, instead of giving the jury the instruction he asked for, had told them that the facts testified to by the witness Lamb, if found to exist, would establish the fact that the intestate of defendant was the plaintiff's

agent, and was responsible as such agent for the funds placed in his hands. He certainly has no cause to complain of the instruction given.·                    No Error.