## Dore Wolkau, Appellant, v. Fred Wolkau, Appellee.

TENANCY IN COMMON, § 16*—*when statute of limitations begins to run against bill for accounting.* The statute of limitations does not begin to run against a bill by one tenant in common against his cotenant for an accounting for rents and profits collected by the latter until after a demand by the former for an accounting has been made or the tenancy repudiated.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded with directions. Opinion filed October 13, 1916.

LIVINGSTON & BACH, for appellant; SIGMUND LIVINGSTON, of counsel.

HART, FLEMING & PRATT and JORDAN & JORDAN, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appellee and appellant are husband and wife and each own, as tenants in common, an undivided one-half interest in certain real estate in the City of Bloomington, Illinois. They became such tenants in common March 10, 1888. The property is improved with a three story brick building, which has been occupied by various tenants. From the date when appellant and appellee became tenants in common to December 3, 1913, when this suit was instituted, appellee had collected all the rents and profits from said property and had paid the taxes thereon. On the last mentioned date appellant brought her suit in the Circuit Court in an action of account to recover her share of such rents and profits. At the November term, 1914, of said court, on motion of appellant, the cause was transferred to the chancery side thereof and she was granted leave to file her bill in equity therein. The bill, in substance, avers that appellee has collected all the rents and profits since March 18, 1888, and has paid the taxes on said property out of said rents; that there has never been a settlement or accounting rendered by him and she has never received any rents or profits from said real estate except the sum of $45 paid to her by appellee December 21, 1908; that the amount of rent collected by him is unknown to her, and prays that he may make discovery of all the rents and profits received by him from said real estate since the date when they became tenants in common; that an accounting be had by the court and appellee be decreed to pay the amount found to be due appellant as the result thereof. Five interrogatories were attached to the bill which, in substance, seek to discover the amount of rent collected by appellee, the names of all the tenants and the rents collected from each, and all taxes and special assessments paid on account of said property during the years specified.

Appellee filed a special demurrer to the bill in which is set out, as a special cause thereof, that a recovery

for the rents which had been received by appellee prior to five years before the bringing of the suit was barred by the statute of limitations. The court sustained the demurrer to that part of the bill which sought to recover rents prior to five years before the commencement of the suit. Appellee thereupon filed his answer to the remainder of the bill, in which it is averred that he has collected as rents from said property during the five years prior to the commencement of the suit, the sum of $9,592.84. The answer also sets out the amount of the taxes paid by appellee on the property during that period of time; but avers that said payments are not pleaded or claimed as a set off to the rents collected by him, and that appellant is entitled to one-half of said rents so collected, or the sum of $4,759.92, which he is ready and willing to pay. The court rendered its decree by which it was adjudged that appellee should pay appellant the sum of $4,759.92 together with $1,148.09 interest due thereon, or a total of $5,857.09.

From this decree appellant has appealed to this court to have reviewed the correctness of the action of the chancellor in sustaining the demurrer to that portion of the bill which asks for an accounting of the rents and profits collected by appellee from the date of the common tenancy to December 1, 1908. Section 1, ch. 2, Hurd's Rev. St. (J. & A. ¶ 27) provides as follows: "That where one or more joint tenants, tenants in common, or coparceners in real estate, or any interest therein, shall take and use the profits or benefits thereof, in greater proportion than his, her or their interest, each person or persons, his, her or their executors and administrators, shall account therefor to his or their cotenant jointly or severally." Section 2 of the Act (J. & A. ¶ 28) provides that the action of account may be sustained by a joint tenant, tenant in common, or coparcener, his or her executor or administrator, against the other or others who receive, as bail-

iffs, more than his or their due proportion of the profits or proceeds of such estate. This statute is a substantial re-enactment of chapter 16 of the Statute of 4 and 5 Anne. At the common law, one tenant in common had no remedy against his cotenant, where the latter had received as rents more than his share of the profits of the common estate unless the latter had been appointed bailiff of the former. For providing a remedy in such cases the Statute of Anne referred to was enacted. *Angelo v. Angelo*, 146 Ill. 629; *Cheney v. Ricks*, 187 Ill. 171. This remedy may be pursued in law by an action of account or in equity by a bill for accounting. Section 15, ch. 83, Hurd's Rev. St. (J. & A. ¶ 7210) provides that all civil actions, not otherwise provided for in the act, shall be commenced within five years next after the cause of action has accrued. It has been held that an action of account comes within this provision and is barred within five years after the cause of action has accrued. *Quayle v. Guild*, 91 Ill. 378. When courts of equity have concurrent jurisdiction with courts of law and the party proceeds in equity, after having been barred at law, he will also be barred in equity. *Bonney v. Stoughton*, 122 Ill. 536; *Harding v. Durand*, 138 Ill. 516; *Richardson v. Gregory*, 126 Ill. 166; *Bates v. Gillett*, 132 Ill. 302; *Manning v. Warren*, 17 Ill. 267.

The question in this case is not whether the statute of limitations applies to an action by one cotenant against another to recover a just share of the rents and profits received by the latter, but is, when does the cause of action accrue and the statute of limitations commence to run against it. It is the contention of appellant that the limitation does not run until after a demand for an accounting has been made or the tenancy repudiated, while the position of appellee is that a cause of action accrued to appellant every time a payment of rent was received by him.

The issue in controversy has never heretofore been decided in this State. Questions in regard to account-

ing for rents have mostly developed in suits for the partition of lands, and in a large number of such cases accountings have been ordered covering periods of time far in excess of five years. *Cooter v. Dearborn,* 115 Ill. 509; *Woolley v. Schrader,* 116 Ill. 29; *Donason v. Barbero,* 230 Ill. 138; *Holderman v. Graham,* 61 Ill. 359; *Regan v. Regan,* 192 Ill. 589. In none of the cases just cited was the defense of the statute of limitations raised or discussed, although in the case of *Regan v. Regan, supra,* the court said: "The question whether any items of an account, when taken, will be barred by the statute of limitations, is not before us and is not decided." This is the only reference to the statute of limitations in cases such as this in this State which we have been able to find. From an examination of other authorities it is apparent that the general rules governing the application of the statute of limitations in suits between cotenants involving the title to the land have not been applied by analogy to suits for an accounting of the rents and profits.

By the statute of this State the tenant who collects the rents and profits is constituted a bailiff. At common law a bailiff of property is not only liable for the actual receipts derived therefrom by him, but also for what he might have received by the exercise of reasonable diligence without wilful fault. Bacon's Abr. 32; Coke on Littleton, 209b; *Woolley v. Schrader, supra; Cheney v. Ricks, supra.* A bailiff has been defined to be a servant who has the administration and charge of lands, goods and chattels to get the best benefit for the owner. (Coke on Littleton, 172a; *Barnum v. Landon,* 25 Conn. 137); and also a person appointed by private persons to collect their rents and manage their estates. (*Elwell v. Burnside,* 44 Barb. (N. Y.) 447.) The nature of the relationship of a bailiff with his principal as applied to cotenants is stated in 17 Am. and Eng. Encyc. of Law, page 696, as follows: "Since the Statute of Anne, the relation between a tenant in

common in the possession and sole enjoyment of the
common property and his cotenants has been regarded
as that of agent and principal, and hence such tenant
is not protected by the statute of limitations from ac-
counting with his cotenants for rents and profits. The
statute does not begin to run in his favor until the re-
lationship existing between the parties terminates, as
upon partition, ouster, or demand and refusal to ac-
count. So also the occupying tenant is chargeable with
interest only from the date of demand or suit
brought.''

It appears that before bringing an action of account
at law against one, to account as bailiff, a demand to
render an account is necessary. *Barnum v. Landon*,
25 Conn. 137; *James M. Chadwick & Co. v. Divol*, 12
Vt. 499; 1 Cyc. 408, 411. The relationship has been
described in various ways. In the case of *Robinson v.
Robinson*, 173 Mass. 233, Mr. Justice Holmes, who
wrote the opinion, says: ''However it may have been
in its origin, this liability to an action of account long
has been regarded as different from bailment on the
one side * * * and from debt or an absolute liability
for money on the other. * * * It seems more like
the accountability of a trustee,—a liability for an iden-
tified fund, which would be discharged by showing
that the fund had been lost without the accountant's
fault. * * * The relation between the parties is
fiduciary. * * * But it is plain from the nature of
the duty created by the Statute of Anne that the time
of limitation ought not to begin to run when there has
been no demand or refusal, and nothing to notify the
plaintiff that the defendant has repudiated the rela-
tion, or that it has come to an end.'' It is further held
in this cause that the time of limitation should not be-
gin to run until after a demand is made, for the addi-
tional reason that such an account between cotenants
is an actual and open account current, based upon the
fact that the defendant received the rents and profits

on the one side and on the other paid out money for repairs, insurance and taxes in respect to which he had a personal claim against his cotenant.

In the case of *Almy v. Daniels,* 15 R. I. 312, it was held that the rule was that the statute begins to run from the time a tenant in common denies the right of a cotenant. This denial of right may be shown by refusal to pay on demand or by an ouster. The case of *McGowan v. Bailey,* 179 Pa. St. 470, holds that one cotenant is a trustee for the other, and the statute of limitations in such cases "is out of the question." In *Ela v. Ela,* 70 N. H. 163, it was held that the cause of action did not accrue until after a demand for an accounting had been made and refused and the statute does not run until after the refusal of such demand. The Supreme Court of Georgia, in the case of *Huff v. McDonald,* 22 Ga. 131, holds that a bailiff is a servant or trustee, and likens such relationship to that of an executor, administrator or guardian, and decides that the statute of limitations does not run until the bailiff begins to hold adversely. Freeman in his work on Cotenancy and Partition holds a contrary view, as do also a number of other cases, but we are of the opinion that the weight of the authority and the better reasoning is that the statute will not run until after a refusal of a demand made or a repudiation of the relationship.

In the case of *People v. Lefens,* 269 Ill. 472, it appears that Mrs. Lefens executed two powers of attorney, by which she constituted her brother, William C. Seipp, and her husband, Thies Lefens, her attorneys in fact and authorized them, jointly and severally, among other things, to collect and receipt for all moneys, rents, demands and choses in action due or to become due her, to represent her in the settlement and administration of her father's estate; to collect and receipt for all sums of money or personal property of every kind, to which she might be entitled under her

father's will or under the laws of the State; to invest and reinvest all money that might come to their hands for her; to take charge of, care for and manage all the real estate owned by her, pay all taxes thereon, make repairs, execute leases, collect and receipt for all rent; to sell such real estate and execute deeds therefor; and, in general, jointly and severally, to do and perform all and every act which she could personally do in regard to all her real and personal property. Thereafter there came into the hands of her brother and husband large sums of money belonging to her which was transferred to her husband's account. Her husband invested and reinvested these funds for a number of years and kept a set of books showing all his transactions in regard thereto, which at the time of his death showed a balance due her of $1,571,697.33. Mrs. Lefens filed a claim against her husband's estate for this amount, and among other defenses interposed thereto was that of the statute of limitations. In the opinion it is held: "By these instruments he was constituted her agent for the investment and management of her estate. He had power to sell and control her property, both real and personal, to the same extent that she could, with the right to reinvest the proceeds. He was under an obligation to account and pay over to her whenever she might demand an accounting or payment, but he was guilty of no breach for which she could bring suit against him until his refusal to account or pay over. As long as the relation of principal and agent existed there was nothing to set the statute of limitations in operation as to claims and accounts between them. (*McHarry v. Irvin*, 85 Ky. 322; *Shepherd v. Shepherd*, 108 Mich. 82; *Lamb v. Ward*, 114 N. C. 255; *Patterson v. Lilly*, 90 id. 82; *Cole v. Baker*, 16 S. D. 1.) Payment was not contemplated until Mrs. Lefens requested it. Her money was placed with her husband as agent, to invest, sell and reinvest, and there was no intention that each item received should be

paid forthwith to her. The statute of limitations does not begin to run against the principal and in favor of his general investing agent upon each item as received, and where there is a continuing general agency it cannot be terminated during the life of the parties, so as to set the statute of limitations in motion, until an accounting is had or a demand therefor made and refused or there is an express repudiation of the agency. *Teasley v. Bradley,* 110 Ga. 497; *Rucker v. Maddox,* 114 id. 899; *King v. Mackellar,* 109 N. Y. 215; *Bacon v. Rives,* 106 U. S. 99.'' It would appear that, under the powers of attorney mentioned, her husband clearly came within the definition of a bailiff of her property, although he is not called such in the opinion of the court. In answer to the contention that Mrs. Lefens never had any intention of claiming the property but regarded it as her husband's because she never did claim it or demand an accounting in her husband's lifetime, the court said: ''It is not surprising that a wife should permit her husband to manage her business for more than five years without demanding an accounting. Payments were made to her and for her account, and in view of the confidence which frequently exists in the conjugal relation, a wife not skilled in business ought not to be regarded as negligent who fails to call a husband who is an able business man to a strict financial accounting at least every five years. We have seen that this is not required in the ordinary case between man and man, and no more does the law require it between man and wife. The evidence is that Mrs. Lefens permitted her husband to manage her affairs as long as he lived, and this was naturally to be expected under the circumstances, so long as domestic harmony prevailed.''

So it can be said in this case it is not surprising that appellant permitted her husband to collect these rents, and the law did not require her to demand an accounting from him every five years. We are of the opinion

that the chancellor erred in sustaining the demurrer to the bill, and the decree is therefore reversed and cause remanded, with directions to overrule the demurrer and order an accounting between the parties as prayed for in the bill from the time the cotenancy was created to the institution of the suit.

*Reversed and remanded with directions.*