## ORANGE COUNTY.

### MARCH TERM, 1837.

PRESENT, HON. STEPHEN ROYCE,
       "   SAMUEL S. PHELPS.
       "   JACOB COLLAMER,   } *Assistant Justices.*
       "   ISAAC F. REDFIELD,

### JAMES M. CHADWICK & Co. *v.* DANIEL S. DIVOL.

Where a writ was directed to the sheriff of Orange county and was served in Orleans county by the sheriff of the latter county, the plaintiff·was permitted to amend his writ by inserting a direction to the sheriff of Orleans county.

A justice of the peace has jurisdiction of the action of account. To perfect the cause of such action, the plaintiff should, before the commencement of his suit, make a demand of the defendant to render an account; but,

If the defendant plead that he was never bailiff, the plaintiff, on the trial of that issue, is not bound to prove that he made a demand.

ACTION OF ACCOUNT, commenced before a justice of the peace and brought to the county court by appeal.

The original writ was directed to the sheriff of *Orange* county his deputy or any constable of said county, and was served in *Orleans* county by a deputy sheriff of the latter county, which facts the defendant pleaded in abatement of the writ, in the justice's court. The plaintiffs, thereupon,

ORANGE,
March,
1837.

Chadwick &
Co.
v.
Divol.

moved to amend the writ, by erasing, in the direction, the word " *Orange*" and inserting in its place, the word *Orleans*, to which the defendant objected, but the justice overruled the objection and permitted the amendment, so that the writ, when amended, was directed to the sheriff of Orleans county, &c. The writ was served on the 7th of May, 1834.

In the county court, the defendant objected to the amendment of the writ, and insisted upon his plea in abatement. The county court sustained the amendment made in the justice's court, to which the defendant excepted.

The defendant then moved to dismiss the suit " because said action is an action of account, *at common law*, and was originally commenced before a justice of the peace, who had no jurisdiction of the same ;" which motion was overruled by the county court.

The defendant then pleaded in bar of the action, that he was never bailiff to the plaintiffs, &c., in manner and form as the plaintiffs in their declaration had alleged, and concluded to the country.

Upon the trial in the county court, the plaintiffs introduced testimony tending to prove, that in January, 1833, the plaintiffs delivered to the defendant abont 800 lbs. of dried apples, to be sold for them at not less than six cents per pound ; that on or before the fifth of May, 1834, the plaintiffs gave to one Langdon an account stated, in which the defendant was charged with 884 lbs. dried apples at six cents per pound amounting to $53,04 and was credited for a horse at twenty five dollars, which account was accompanied by a letter from the plaintiff, Chadwick, to the defendant, requesting the defendant to pay the balance to Langdon, which account and letter were by Langdon delivered to the defendant, at Derby, on the fifth of May, 1834, and that Langdon then requested the defendant to pay said balance ; that defendant admitted that he had sold the apples, but declined paying the balance stated, alleging that the plaintiffs should have given him credit for a larger sum for the horse.

The defendant introduced testimony tending to prove that the plaintiffs received of him a horse in part payment of said apples; that defendant resided at Derby in the county of

Orleans, a distance of eighty miles from Newbury, the residence of the plaintiffs, and there rested.

The defendant requested the court to charge the jury, that, to entitle the plaintiffs to a verdict, they must prove that they made a demand of the defendant to render an account and pay the balance due, previously to the commencement of the suit;—

That the plaintiffs must give the defendant a reasonable time to render his account, after such demand, before causing a writ to be served, and requested the court to decide, as, a question of law, that from May 5th to May 7th, the day when the writ was served, was not a reasonable time for such accounting under the circumstances of this case.

The defendant requested the court to decide, that Langdon's calling on the defendant with the account of the plaintiffs, and requesting the defendant to pay the balance, and the defendant's declining, for the reason by him given, was not a sufficient demand on the part of the plaintiffs to entitle them to a verdict.

The court refused to decide the law and charge the jury as above requested, but charged them that if they found that the defendant received the apples, as stated, and sold them, and that Langdon called on the defendant at Derby on the 5th of May, 1834, and presented him said account and letter and requested him to pay the balance of the account, and that the defendant declined paying it, then the plaintiffs were entitled to a verdict.

The jury returned a verdict for the plaintiffs, and the defendant excepted to the decisions and charge of the court.

Judgment to account was then rendered and an auditor appointed who afterwards reported a balance due from the defendant to the plaintiffs which report having been accepted by the county court, and judgment rendered thereon, the cause was brought to this court for trial on the exceptions before stated.

*A. Underwood*, for defendant.

*L. B. Peck*, for plaintiff.

The opinion of the court was delivered by

Royce, J.—This is an action of account, wherein the defendant is charged as bailiff and receiver of certain wares and

*Margin:* Orange, March, 1837. Chadwick & Co. v. Divol.

ORANGE,     merchandise.   It was originally instituted in a justice's court,
March,      and the first question now presented is, whether that court
1837.       had jurisdiction.   The question does not arise in reference
——————      to the amount in controversy, but from the nature of the ac-
Chadwick &  tion ; it being objected that no such action at common law,
Co.         or under our statute relating particularly to the action of
v.          account, is cognizable by a justice of the peace.   The objec-
Divol.      tion is grounded on the form of trial in this species of action,
            which is substantially the same under the statute as at com-
            mon law.   It must be conceded at once that the course of
            proceeding, mentioned in the act referred to, is by no means
            adapted to a justice's court; and it is likewise true, that the
            course there prescribed is in terms made applicable to " any
            action of account pending in any court in this state."   This
            act was passed February 23d, A. D. 1797.   The act, defin-
            ing the jurisdiction of justices of the peace, passed March
            4th, A. D. 1797, confers upon a justice the right to " hear,
            try, and determine all pleas and actions of a civil nature,
            (with certain exceptions, among which the action of account
            is not mentioned) where the debt, or other matter in demand
            does not exceed thirty three dollars."   This language, with
            the like exceptions, is used in the subsequent statutes,
            which from time to time have enlarged the jurisdiction of a
            justice.   These justice acts are subsequent to the statute re-
            lating to this form of action, and their terms are sufficiently
            explicit and comprehensive to embrace the action of account.
            The objection is therefore reduced to this, that since the
            legislature had seen fit to prescribe a peculiar course of pro-
            ceeding in the action of account, in whatever court it should
            be pending, they could not have intended, by the justice acts,
            to transfer the action in any instance to a court incapable of
            pursuing the course thus directed.   But it must be remem-
            bered, that the statute, containing these specific directions,
            has authorized an action of account to be brought on book
            accounts, declaring that " the same proceedings shall be had
            therein, as in the common action of account."   And it is
            well known, that this is the action which is every day brought
            to enforce claims on book.   It is equally well known, that
            under the original justice act already cited, justices of the
            peace acquired undisputed jurisdiction of this latter action of
            account, which they still retain, regulated, with reference to the

amount, by several later statutes.   The order of proceedings set forth in the act of February, A. D. 1797, is therefore controlled and superseded, so far as justice courts are concerned, by these other statutes.   And such being the consequences in one class of actions of account, we can discover no substantial reason why it should not follow in the present. The result is, that in this case the justice had jurisdiction.

The next question arises on a plea in abatement, and an order of the county court permitting an amendment.   The writ was served by the sheriff of Orleans county, when it was directed only to the sheriff of Orange.   This matter having been pleaded in abatement, the court permitted an amendment of the writ, by inserting a direction to the officer who made the service.   We are inclined to sustain the amendment, so far as to prevent an abatement of the suit, without deciding on its effect in legalizing the doings of the officer for collateral purposes.   To this extent we have the repeated decisions in Massachusetts, and, for the reasons on which these authorities proceed, we are disposed to adopt the rule which they have established.   9 Mass: R. 95. *id.* 217.   11 do. 276.

The remaining question arose on the trial of the issue preparatory to the judgment to account.   It was insisted by the defendant, who had pleaded *that he was never bailiff, &c,* that the plaintiffs were bound to prove a demand upon him, before action brought, to render an account ; and that the evidence, offered for that purpose, was illegal and insufficient. On the last point we are clearly of opinion with the defendant.   It does not appear that the messenger of the plaintiffs, who made the supposed demand, had authority to settle, or even to receive, the defendant's account.   His only business was, to exact payment of a specified sum claimed by the plaintiffs.   But the important enquiry is, whether, upon the trial of that issue, the plaintiffs were bound to show a demand. It is contended they were, because a request or demand is alleged in the declaration, and was necessary to perfect the cause of action ; also because the plea was the appropriate general issue in the case, and therefore put the plaintiffs on proof of their whole declaration.   We think that a demand, or something tantamount to it, was necessary to perfect the cause of action. But we are not satisfied, although a demand is alleged in the

ORANGE,
*March,*
1837.

Chadwick &
Co.
*v.*
Divol.

Chadwick &
Co.
*v.*
Divol.

declaration, that the plaintiffs were required to prove it under the issue then on trial.    This plea, though said to be the general issue, does not by its terms involve the question of a demand; nor do we know of any authority in support of the defendant's position, as applied to the present case.    There are other pleas denominated the general issue, as *non est factum* in debt or covenant on a deed, *non cepit* in replevin, &c., which are always taken in a sense far more literal and restricted than that for which the defendant contends.    And we are fully of opinion that this plea should receive a similar construction.    It was therefore sufficient for the plaintiffs to establish that relation between themselves and the defendant, which alone the plea professed to deny.

Judgment of county court affirmed.