WILLIAM B. BENSON, *in Equity, versus* FRANCIS O. J. SMITH.

Every thing essential to a statute title must appear of record.

The power of sheriffs and their deputies to serve and execute all writs and precepts to them committed, is conferred by statute, and does not otherwise exist.

The modes in which they are to be served and executed is regulated by statute; and the doings of the officer, unless substantially conformable thereto, are invalid.

The seizure of property upon execution, is necessary to make the sale valid.

Subsequent proceedings, to vest in the purchaser the title of real estate sold on execution, relate to the *time* of the seizure, and depend upon the state of the title as it *then* was.

Prior to the passage of the Act of Jan. 28, 1852, entitled "An Act to amend the ninety-fourth chapter of the Revised Statutes," sheriffs and their deputies had no authority to seize and sell mortgaged property as a whole, when a part of it was in a county to which their authority did not extend.

A deputy sheriff, assuming to act under the Revised Statutes of 1841, seized, as a whole, the property of a railroad corporation, which extended into an adjoining county, in which he was not commissioned to act. After notice of sale had been given, and within ten days of the legal expiration of the notice, the Act of Jan. 28, 1852, was passed, giving officers authority to seize and sell, as a whole, property so situated, but it did not change the requirement in regard to notice. — *Held,* that the notice of sale having been given under a statute which did not authorize the seizure, it was, in contemplation of law, no notice, and the sale void.

A notice, to be effectual, under the statute of 1852, must be given thirty days at least previous to sale, and one, which is ineffectual till ten days only before the sale, is insufficient.

The Act of Jan. 28, 1852, amending the thirty-fourth chapter of the Revised Statutes, does not dispense with any proceedings previously necessary to make a valid sale on execution.

BILL IN EQUITY.

The plaintiff claimed to be the owner of the right to redeem the franchise of the Buckfield Branch Railroad Company, together with all the personal and real estate which had been conveyed by said company to the respondent by a deed of mortgage; and he brought this suit to obtain a judgment of the Court that he might be permitted to redeem the same, on paying the sum which should be found to be due as principal and interest on said mortgage. He claimed to derive title to the right of redemtion by virtue of a sale, on execution, of the same, by Jesse Drew, a deputy sheriff, to David Stanley, who conveyed it to F. O. Libby, from whom the plaintiff held a conveyance.

The officer who made the sale, was commissioned for Oxford county, and a part of the property was in that county, and a part in the county of Cumberland.

The points in issue in the case fully appear in the arguments of counsel and the opinion of the Court.

*Shepley & Dana,* for plaintiff.

1. *Title of plaintiff.*—By the act of incorporation, July 22d, 1847, c. 54, the road was to extend "from some point or place near Buckfield village, through the towns of Buckfield, Hebron and Minot, at such place at or near Mechanic Falls, on the Little Androscoggin river, as will best connect with the Atlantic and St. Lawrence Railroad, now located to that place."

The legal existence of the corporation, and of the road, thus described in its charter, "with all personal and real property of said corporation, * * * as the same exists by virtue of said Act of incorporation," is admitted by the conveyance in mortgage to the defendant, on October 29, 1849.

The plaintiff and Rufus Porter, on November 8, 1851, recovered a judgment against the corporation. Execution issued thereon November 24, 1851.

The right in equity of the corporation, with its franchise, was seized, advertised, and sold at auction, by virtue of that execution, to David Stanley, on February 7, 1852, by Jesse Drew, a deputy sheriff, who on that day conveyed the same by deed to Stanley.

The officer advertised and proceeded in conformity to the provisions of statutes, c. 76, § 17; c. 94, § § 36–39; c. 117, § 20; and the purchaser became the legal owner of the equity.

June 4, 1853, David Stanley, by a deed of release, conveyed the equity to Francis O. Libby, who, on October 28, 1853, conveyed it to the plaintiff.

Thus plaintiff had acquired a title to authorize him to redeem.

2. *His bill is maintainable without a tender of the amount due on the mortgage.* — The defendant entered into possession of the road on January 11, 1851.

No tender was necessary, if defendant, on demand, had unreasonably neglected to render a true account of the amount due. Chap. 125, § 16. He had done so.

Demand was made by David Stanley for an account on March 12, 1853. By F. O. Libby on June 18, 1853; and by plaintiff on November 2, 1853. This is admitted by the answer.

The grantee of a right in equity acquires with it a right to the benefit of all acts of his grantor respecting the estate mortgaged. *Cutts* v. *York Manuf. Co.*, 18 Maine, 190.

3. *The estate mortgaged is subject to redemption. It is real estate.* — The answer denies that any real estate was mortgaged. For this assertion, (and it amounts to no more,) the defendant relies upon the proviso contained in the first section of the Act of April 7, 1845, c. 165.

The section, in substance, declares that the real estate of any railroad company shall be taxable to it by the cities or towns in which such real estate may lie, provided that the track of the railroad, and the land on which it is constructed, shall not be deemed real estate. That is, it shall not, for such purpose, be deemed real estate. The subject matter of

the enactment, discloses the intention, and determines the true construction of the language. The purpose of the Act is plainly and clearly expressed. It was to authorize cities and towns to tax the real estate of railroads, not to include as such real estate to be taxed, the railroad bed. There was no intention to declare that the road bed, or track, for other purposes, should not remain as real estate. If it were possible to make a different construction, it could not be applied to this corporation.

Its charter, granted subsequently, recognizes the land obtained for the track, and other purposes, to be real estate. By the first section, it is authorized "to purchase, or to take and hold, so much of the land and other real estate," as may be necessary. By the fourth section, it is authorized to purchase and hold land; and the thirteenth section declares that "all real estate purchased by said corporation, for the use of the same, under the fourth section of this Act, shall be taxable to said corporation, by the several towns and plantations in which said lands lie." So that the very lands purchased by this corporation for its road-bed and other uses, are recognized to be real estate, and taxable as such, contrary to the provisions of the Act of 1845.

Some of the effects of a different construction, would be, that land, purchased for a railroad, may be purchased and sold as a horse, or bale of goods; and that the title to it may be conveyed without any deed or other evidence of it. And there could be no other means of ascertaining or proving the title than is common for all personal property; there could be no security of title by record; for a record of title to personal property, made in the registry of deeds, is unauthorized and void. If the railroad, to vary the course or shorten the distance, should, in any place, be discontinued, the land on which it was constructed must become again real estate; and yet the title of the then owner may have been acquired without any written evidence of it, and proof of such title must be received in courts of law.

4. *The equity of redemption has not been foreclosed or for-*

*feited.* — The defendant does not appear to have entered for condition broken, according to any of the modes provided by statute, c. 125, § 3.

His answer states that he notified the corporation on January 11, 1851, of the non-payment of the sums that had become due, &c.; and that he would accept the mortgaged premises in full satisfaction of said debt, and allow the corporation three years to redeem; "that upon said notice and proposal said road and premises were delivered to this respondent by said company; that more than three years have elapsed, and no payment has been made.

There is no proof presented that the corporation, by any vote or legal act of its officers, agreed to that proposal.

A mere delivery of the possession of the road would not make the corporation a legal party to such an agreement.

If such an agreement had been actually made it could not operate to create a forfeiture. *Ireland* v. *Abbott*, 25 Maine, 155.

*F. O. J. Smith, pro se.*

1. The complainant claims a right to redeem, as of mortgage, the property of the Buckfield Branch Railroad Company, as conveyed to the respondent by deed, a copy of which makes part of the case.

This alleged right of redemption is claimed to have been derived to the complainant from the purchaser of the same at a sheriff's sale, conducted in conformity to the provisions of the 76th chap. of the Revised Statutes, § 17; and of the 94th chap. § § 36 – 39; and c. 117, § 20.

But the sale so made was wholly insufficient to pass any valid title. The officer's return of his proceedings of sale, and his deed to Stanley, represent expressly, as well as by reference to the deed of defendant's title from the railroad company, the situation of the mortgaged premises to have been, at the time of seizure and sale, in towns of two different counties, viz.: in Buckfield and Hebron, which were in Oxford County, and in Minot, which was in Cumberland county. The same return and deed of sale, represent the

notices of sale to have been posted up in the towns of Sumner, Paris, Oxford and Turner, which were in Oxford county, and in Auburn and Poland, which were in Cumberland county. The deputy sheriff, in his seizure and return upon the execution, claims to act only by his authority as an officer limited to the county of Oxford. In no other capacity did he assume to act. In his deed to Stanley, he expressly recites his authority as "a deputy sheriff under Samuel Gibson, sheriff of the county of Oxford." This officer of Oxford county had no authority to execute the commands of the writ of execution without the limits of his county, and within the limits of another county, for which he had not been commissioned. His proceedings, therefore, in making seizure and sale of the judgment debtor's estate, either real or personal, without the limits of Oxford county, and within the limits of Cumberland county, were wholly void. The seizure was made, as by the officer's return, on the "first day of December, 1851." "The subsequent proceedings, necessary to make a levy available, have reference to that day, and depend upon the state of the title, as it then existed." *Bagley* v. *Bailey,* 16 Maine, 153.

The R. S., c. 94, § 40, provides, that "the seizure of the right on the execution, shall be considered as made on the day when the notice of the intended sale was given, whether to the debtor, or by posting up notice," &c. The officer's return fixes that day as the 5th of December, 1851. Of course, the subsequent proceedings necessary to make the levy available, referred only and exclusively to the authority with which the officer was vested, and under which he acted, on that day.

"Every thing essential to a title under the statute, ought to appear of record." *Wellington* v. *Gale,* 13 Mass. 488.

A sheriff's sale operates a statute transfer of the interest; and it is essential to the title of the purchaser, that the requisites of the statute should be complied with." As " if a tract of land mortgaged is situated in more towns than one, it is necessary that the sheriff, in making sale of the mortga-

ger's right in equity of redemption, under the statute of 1821, c. 6, [R. S. 1840, c. 94, § 37,] should post up two notifications in every town where any part of the land is situated." *Grosvenor* v. *Little*, 7 Maine, 377.

The Court say, in this last case, "a part of the land mortgaged was situated in the town of Poland. The officer posted up a notification in but one place in that town. The omission to do it in two places there, we are satisfied, is fatal to the title of the purchaser. Nor is it, in our opinion, the less so, because the mortgage also embraced land lying in another town."

The equity of redemption being an entirety in lands of two counties, and the seizure and sale assuming to cover that entirety, they could not be good for the redemption of a part, and bad for the remainder—good for so much as lies in one county and bad for so much as lies in the other county. For the grantee of a part of mortgaged premises cannot redeem, except by payment of the whole mortgage. *Smith* v. *Kelly*, 27 Maine, 237. And to make valid the sale of a right to redeem a part, upon terms that would operate as an obligation to redeem other property than the purchased redemption fails to cover, although represented as covering, is wholly unwarranted by any statute authority. Hence, in the above case, the sale of the equity of redemption, being to lands in two distinct towns, and insufficient in reference to the portion situated in one of those towns, because both portions were designed to be covered by the sale, vitiated the whole sale. And the case of *Franklin Bank* v. *Blossom*, 23 Maine, 546, confirms this position.

2. The plaintiff's claim, that this bill is maintainable without a tender, for reasons set forth in his argument, was traversed and denied, and the following authorities were cited : *Battle* v. *Griffin*, 4 Pick. 16 ; *Fay* v. *Valentine*, 2 Pick. 546 ; *Willard* v. *Fiske*, 2 Pick. 540 ; *Putnam* v. *Putnam*, 13 Pick. 130 ; *Willard* v. *Fiske*, 2 Pick. 543 ; *Whitwood* v. *Kellogg*, 6 Pick. 430 ; *Roby* v. *Sherman*, 34 Maine, 272.

3. The estate mortgaged was not real estate.

The charter, § 1, expressly provides, "and the land so taken by said corporation, shall be, held as lands taken and appropriated for public highways."

Unless the ownership of an easement confined to the use, and never descending into the fee of lands, acquired by the public in highways, constitutes real estate, then railroad beds and tracks are not real estate, but are expressly made a less estate—a mere easement—not subject to the operation of the rights of redemption like real estate. It is but a chattel interest.

Again; the charter itself discriminates between what is real estate, belonging to the corporation, and what is not real estate, in the lands they use. Sect. 13 provides, that "all real estate purchased by said corporation, for the use of the same, under the fourth section of this Act, shall be taxed to said corporation, by the several towns and plantations in which said lands lie, in the same manner as lands owned by private persons; and shall, in the valuation list, be estimated the same as the other real estate of the same quality in such towns or plantations, and not otherwise."

Turning to the fourth section, it is found, that the "president and directors" have authority "to purchase and hold land, materials, engines, and cars," &c. In section 1, also, the language is "to purchase or to take," the two modes being alternatives, and contradistinguished. In each section, the title thus contemplated by purchase in respect to land, is as absolute as the title contemplated in respect to "materials, engines and cars." The process is one of absolute purchase. The plaintiff has not exhibited a title covered by the mortgage, to one square inch of real estate so purchased by the mortgager, or so held by purchase. On the contrary, the whole estate held, is that which has been "taken" under the provisions of the first section of the charter, and for the use of which, not for the title, damages have been assessed. To say, that taking by purchase, and taking by virtue of the authority derived from the power of eminent domain, still reserved to the State and delegated in the charter, are one

and the same in meaning, or in effect, finds no support in judicial precedent, or in reason. When taken in the former way, the fee passes to and remains in the corporation, without reversion, whether the road be continued in operation, or not. In the latter case, the fee never passes to, and is never vested in, the corporation, but reverts, disencumbered, on the instant the road ceases to be continued in operation and upheld under the charter.

These different operations of the titles held by the corporation, illustrate, beyond disputation, it would seem, the different natures of those titles.

Hence, it has been adjudged, in *Fryeburg Canal* v. *Frye*, 5 Greenl. 42, where the damages for land taken to build a canal, are in question, it does not involve any title to real estate. See *Harrington* v. *County Com. Berkshire*, 22 Pick. 266.

In *Weston & als.* v. *Foster & als.*, 7 Met. 299, " the Court are of opinion, that the Eastern Railroad Company, by having laid their road over the premises, acquired only an easement therein, and no title to the estate."

So where, in the charter of the Vermont Central Railroad Company, it is provided that the company may take land for the use of their road, and " shall be seized and possessed of the land," it is adjudged that they are not made owners of the fee, but it gives them a right of way merely." *Quimby* v. *V. C. R. R. Co.*, 23 Verm. 387; *Ib.*, 1 Am. Railway Cases, 251.

So, in *Trus. of Pres. Cong. in Waterloo* v. *Auburn and R. R. Co.*, 3 Hill, (N. Y.) 568, the Court say, "But the plaintiffs were not divested of the fee of the land by the laying out of the highway; nor did the public thus acquire any greater interest therein than a right of way, with the powers and privileges incident to that right; such as digging the soil and using the timber and other materials found within the limits of the road, in a reasonable manner, for the purpose of making and repairing the same. Subject to this easement, and this only, the rights and interest of the owner of the fee

remained unimpaired." And among numerous authorities cited by the Court to this doctrine, is *Perley* v. *Chandler*, 6 Mass. 454, wherein Chief Justice PARSONS says, "Every use to which the land may be applied, and all the profits which may be derived from it, consistently with the continuance of the easement, the owner can lawfully claim. He may maintain ejectment for the land, thus encumbered; and if the way be discontinued, he shall hold the land free from the incumbrance."

Pursuing the principle of this Massachusetts doctrine, the Court, in 3 Hill, above cited, further adjudged, "the Legislature have no power to authorize the construction of a railroad across a highway, without providing for a compensation to the owner of the land over which it passes."

The right to use the land of others, for a precise and definite purpose, not inconsistent with the right of property in the owner, is, in legal contemplation, an easement, or franchise, and not a right of property in the soil, even though the easement be of such a nature as to deprive the owner of all useful or available beneficial interest in the land. *Boston Water Power Co.* v. *B. & W. R. Road*, 16 Pick. 512 to 522.

So where a bathing house, built upon flats below low water mark, upon piles, was mortgaged, and the right of redemption sold according to the mode of levying upon a right in equity to redeem real estate, and the bill to redeem was demurred to, the Court adjudged the demurrer good, and the interest not such as could be taken and sold in the manner set up. *Marcy* v. *Darling*, 8 Pick. 283.

A turnpike corporation has no right of herbage within the limits of the road, but it is the exclusive property of the owner of the fee, who may maintain trespass for any injury done to the soil. *Adams* v. *Emerson*, 6 Pick. 56.

Hence, when the Legislature of this State, by Act of 1845, c. 165, § 1, in providing that "all the real estate of said railroad company," &c., "shall be taxable" "in the same manner as the lands" of private persons, cautiously negatived a conversion of the mere easements of such corporations into

real estate, in these words:—"*Provided, however,* that the track of any railroad belonging to any railroad company incorporated by this State, and the land on which any railroad track is, or may be constructed, shall not be deemed real estate."

This would seem to be conclusive. At the same time, it does not conflict with the idea, that such a corporation may become the owner of real estate, not located for the track; although in the case of *Bangor & Piscataquis R. R. Co.* v. *Harris,* 21 Maine, 533, the Court held, that the provision of the plaintiff's charter, by which "the capital stock of said company" should "be holden and considered as personal estate," converted the property of the road "into personal estate." "The interest in this railroad, being personal estate," is the language of the Court.

*Shepley & Dana,* in reply.

TENNEY, C. J.—The plaintiff claims to be the owner of the right of redeeming the franchise of the Buckfield Branch Railroad Company, with all the privileges and immunities, together with all personal property and real estate of said corporation, however situated and bounded, within the counties of Oxford and Cumberland, together with all the buildings situate on said premises, including all iron rails, the same having been mortgaged by said corporation to the defendant, by its deed, dated October 29, 1849, under a sale of the same right, claimed by the plaintiff, made to David Stanley, on February 7, 1852, and which passed through mesne conveyances to the plaintiff. The sale purports to have been made by Jesse Drew, as a deputy sheriff of the county of Oxford.

The plaintiff seeks a decree under his bill, that he may be permitted to redeem the premises, by paying, which he offers in his bill to do, what, if any thing, shall appear to remain due, in respect to the principal and interest on said mortgage. The defendant filed his answer to the bill, and, among other things relied upon in defence, he insists that said Stanley acquired no right of redeeming the premises un-

der the attempted sale, the proceedings of the officer being ineffectual to vest any interest in him.

Every thing essential to a title under the statute ought to appear of record.   *Wellington* v. *Gale*, 13 Mass. 183.   And we are to look at the return of Jesse Drew, the deputy sheriff, who returned his doings upon the execution, by authority of which he professed to act, and compare it with the provisions of the statute, touching the sale of such property.

The corporate property of any company, in this State, and the franchise of any corporation, having the right to receive toll, &c., shall be liable to attachment on mesne process, and to be levied upon by execution for the debts of the corporation, as provided in chapters 94, 114, and 117, of the Revised Statutes.   R. S., c. 76, § 17.

By c. 94, § § 36 and 37, the right of redeeming real estate may be taken and sold on execution; in which case the officer shall give written notice of the time and place of sale, to the debtor, &c., and shall cause notifications thereof to be posted in some public place, where the land lies, and in two adjoining towns, all of which shall be done thirty days, at least, before the day of sale; and shall also cause an advertisement of the time and place of sale, to be published three weeks successively before the sale, in some public newspaper, printed in the county where the land lies, &c.

By c. 117, § 20, R. S., whenever judgment has been recovered against any company, incorporated with power to receive toll, the franchise of such corporation may be sold on execution at public auction; the officer giving notice of the time and place of sale, by posting a notification in any town or plantation, in which the treasurer, clerk or any officer of the company, if there be any officer, and, if not, where any stockholder may reside, thirty days, at least, before the day of sale, and by causing an advertisement, &c., to be inserted three weeks successively in some public newspaper, &c., four days before the day of sale.

It is objected by the defendant, that the officer, who returned upon the execution that he had made sale of the interest,

alleged to have previously belonged to the corporation, the debtor in said execution, being a deputy sheriff of the county of Oxford only, according to his return, could not seize and make sale of the mortgagers' right, when the right, attempted to be sold, existed in the county of Cumberland, as well as in the county of Oxford; there being no distinction between the part lying in one county and that in the other, in the sale, or in the price received, but the entire right being exposed for sale and sold together.

By R. S., c. 104, § 19, " every sheriff and each of his deputies shall serve and execute, within his county, all writs and precepts, to him directed and committed, and issued by lawful authority."

The statutes confer the power upon sheriffs and their deputies; and unless the power is thereby conferred expressly, or by fair implication, it does not exist.

The mode in which writs and precepts shall be served and executed is regulated by statute; and unless substantially conformable thereto, the doings of the officer are invalid.

The seizure of property upon execution, with the view to make sale thereof, is regarded as an important and necessary act in making a legal sale.

Subsequent proceedings, in order to vest the title in the purchaser, have reference to the time of the seizure, and depend upon the state of the title, as it then was. *Bagley* v. *Bailey*, 16 Maine, 153.

Again; the statute provides, that the seizure on execution, of a debtor's right to redeem estate mortgaged, shall be considered as made on the day when the notice of the intended sale was given, whether to the debtor, or by posting up notices, or by advertising in the newspaper. R. S., c. 94, § 40. A seizure, therefore, of property, is contemplated as essential to a valid sale.

It cannot be contended, that a sheriff or his deputy, can seize or sell property in a county, in which he is not commissioned to act; consequently, all notices of such sale, must be utterly nugatory. Nor can he seize and sell property with

any greater legal propriety, as a whole, when a part of that property was in a county to which his authority therein did not extend.

When Jesse Drew, the deputy sheriff, who undertook to make sale of the right in equity to redeem the premises, mortgaged by the Buckfield Branch Railroad Company to the defendant, posted the notices of sale, &c., we are not aware of any power in him, to expose by sale, any right existing beyond the limits of his precinct. If he had no right to sell, he certainly had none to seize, and the notices were then a nullity.

But the plaintiff relies upon the statute of January 28, 1852, which went into operation on that day, ten days only before the sale. It is not perceived, that the notices and advertisements, would not have been conformable to law, if this statute had been in force at the time of the seizure, and the causing of the notices to be given, and the advertisements to be published. Nor do we see any defects in the sale, upon this hypothesis, if the property treated as real estate was legally of that character.

This statute provides, that when the mortgaged lands are situated in two or more counties, the sheriff, or a deputy sheriff of either of the counties, may sell the whole right of redemption; and if it appears that he gave the notices, "as above prescribed," the sale shall be in all respects as effectual as if the land had been wholly in a town situated in his own county." This provision, by its terms, is an addition to section 37, of chap. 94, of the Revised Statutes of 1841. The object of this enactment, seems to have been, merely, to allow the entire right which may exist in two counties, to be sold by a sheriff or his deputy in one of the counties, provided the notices shall be such as were previously required when the land lay in one county exclusively.

This statute is general, and designed to give a power to a sheriff, or his deputy, after its passage, which did not exist before. It does not, in the slightest degree, dispense with any act previously necessary, to make valid a sale of an equity

of redemption in real estate. The former requirement, that notices should be given thirty days at least before the sale, remained unimpaired. The notices, "as above prescribed," must refer, not only to notices which the statutes, existing when they were made, provided to be given upon a seizure of an equity o ' redemption, legally made, but also to those which, under the same laws, would be required as parts of the proceedings, which would constitute a valid transfer of the interest attempted to be sold. It could not refer to notices upon a seizure, which the officer had no power to make, and which, if made, would be without legal effect.

A paper, exposed in a public place, purporting to be a notice that a sale would be made, which the law at the time did not authorize, was no notice whatever. And so long as a notice to be legal, is required to be given thirty days at least previous to the time of sale, one which is ineffectual till ten days only before the sale, cannot be sufficient.

The steps essential to render the sale of the equity of redemption effectual, not having all been taken, the purchaser thereof acquired no interest, and consequently could confer none upon others.

The preceding views are based upon the assumption, that the defendant had the rights which the plaintiff supposes, before the attempted transfer thereof, and that the statutes provided a mode by which those rights could be transferred under an officer's sale. Whether such rights existed, and were the subject of sale upon execution, are questions upon which we give no opinion.        *Bill dismissed with costs.*

HATHAWAY, CUTTING and GOODENOW, J. J., concurred.

RICE, J., concurred in the result.