[No. 2329.]

## McArthur, Receiver, v. Boynton.

1. **Sheriffs—Process—Authority.**

The authority of a sheriff to execute process is purely statutory, and no power exists in him except such as is expressly conferred or may be fairly implied.

2. **Same—Attachments.**

A writ of attachment directed to the sheriff of a county cannot be executed by the sheriff of any other county, and cannot be executed by the sheriff to whom it is issued outside of his own county.

3. **Same—Amendments.**

· Where a writ of attachment directed to the sheriff of one

county was attempted to be executed by the sheriff of another county levying it upon property in his county, the levy was void and could not be cured by amendment after the attempted levy by changing the direction of the writ to the county in which the levy was made.

*Appeal from the District Court of El Paso County.*

Messrs. Lunt, Brooks & Willcox, for appellant.

Messrs. McAllister & Gandy, and Messrs. Arrington & McAliney, for appellee.

Thomson, P. J.

Replevin for a stock of goods, commenced January 25, 1897, by D. R. McArthur, receiver of The California Mercantile Company, against W. S. Boynton. The answer denied ownership or a right of possession in the plaintiff, and alleged that the defendant, as sheriff of El Paso county, under and by virtue of a writ of attachment, in due form issued out of the county court of Pueblo county, in a suit therein pending, wherein Chas. Henkel & Co. were plaintiffs, and M. E. Roundtree defendant, levied upon the stock and took it into his possession as the property of Roundtree. The answer also alleged that Roundtree claimed to have sold the stock to The California Mercantile Co. prior to the issuance of the writ of attachment, but averred that by reason of a want of compliance with certain of the provisions of the statute of frauds, the sale was void as against the attachment plaintiffs, and that as against them, the goods were still the property of Roundtree. The affirmative statements of the answer were denied by a replication. The judgment was for the defendant, and plaintiff appeals.

There was evidence tending to show a right of possession of the property in the plaintiff at the time of the commencement of this action. There

was also evidence which tended somewhat in a contrary direction; but the title shown by the plaintiff was good as against one having no right; so that the question of the character of the defendant's act in taking the property becomes important. In support of the allegations in his answer respecting the authority by which he took possession, the defendant offered the writ of attachment in *Henkel & Co. v. Roundtree*, the return of the defendant as sheriff, upon the writ, and an order of the court out of which the writ issued, purporting to amend it. This evidence was admitted over the objection of the plaintiff, and whether it was properly admitted, constitutes the real question in the case.

The original writ was issued by the county court of Pueblo county on the 23rd of January, 1897. It was directed to the sheriff of Pueblo county, and commanded him to attach all the property of the defendant, Roundtree, in that county not exempt from execution, or so much thereof as might be necessary to satisfy the plaintiff's demand. The writ was delivered to the defendant as sheriff of El Paso county, and he made return upon it that on the 26th day of January, 1897, he executed it at Cripple Creek by levying upon and taking into his possession the property in controversy. Cripple Creek was then in El Paso county. On the 26th day of April following, the county court, after finding that the writ was erroneously directed to the sheriff of Pueblo county, ordered that the direction be amended by striking out and erasing the word "Pueblo" before the word "county," and writing over the word "Pueblo" the word "El Paso." This was never done, and the writ was introduced in its original form. Whether without a compliance with the terms of the order respecting erasures and substitution, there ever was an amendment of the writ; or, whether the order

itself might be regarded as operating to amend it, we need not inquire.

The general authority of the sheriff in the matter of the execution of writs is defined in section 855, Mills' Statutes, as follows: "The sheriff in person, or by his undersheriff · or deputy, shall serve and execute, according to law, all processes, writs, precepts and orders, issued or made by lawful authority, and to him directed." In relation to attachments, section 97, Mills' Code, provides as follows: "The writ shall be directed to the sheriff of any county in which the property of such defendant may be, and require him to   *   *   *   attach and safely keep all the property of such defendant within his county, not exempt from execution, or so much thereof as may be sufficient to satisfy the plaintiff's demand.   *   *   * Several writs may be issued at the same time to the sheriffs of different counties." In so far as relates to the execution of ·process, the power possessed by the sheriff is conferred by the statutes; and no power exists in him except such as is expressly so conferred, or may be fairly implied.—See *Benson v. Smith,* 42 Me. 414.

The original writ in this case was, in its terms, an exact compliance with the statutory provisions. It was directed to the sheriff of Pueblo county, and would have been a complete protection to him if he had levied upon Roundtree's property in that county. But it did not authorize him to take property outside of that county, and it did not authorize any person but him to take property in any county. When the defendant seized the goods in question, he was simply a trespasser. The fact that he had this writ in his possession, is entirely immaterial. The writ did not authorize the sheriff of Pueblo county to lay his hand on property in El Paso county, and it did not authorize this defendant to lay his hand on property any-

where. The possession acquired by the defendant was wrongful, and not by virtue of a levy.—See *Steel v. Metcalf*, 4 Tex. App. 313.

But it is contended that the order directing the amendment of the writ related back to the time of the taking, and validated the act by converting it into a levy. Courts should be liberal in allowing amendments, but the limits are defined within which they should be allowed. Generally, the purpose of · an amendment is to cure some defect apparent on the face of the paper, or impart sufficiency where before there was insufficiency. But it is not allowable, under the guise of an amendment, to create something new or different. Thus, when a cause of action is defectively or insufficiently stated, the statement may be amended so as to free it from the defect or insufficiency; but the amended statement must show the same cause of action attempted to be shown in the defective one. A new cause of action cannot be substituted by amendment.

It is provided by section 117, Mills' Code, that "when a writ of attachment shall be held to be defective, the same shall be allowed by the court to be amended in such time and manner as it may direct." This is the only statutory provision relating to amendment of writs of attachment, and outside of it there is no authority for the amendment of such writs. A writ is defective when it lacks something which the law requires it to contain; and the defect, as in other cases where amendments are allowed, must appear on its face. This writ was not held to be defective. The effect of the ruling was that it was not the writ which should have been originally issued; and the order was to convert it into another writ. As we have said, there was no defect or insufficiency in this writ. It was complete and perfect. At the same time that it was issued, another writ might,

in conformity with code section 97, have been issued, directed to the sheriff of El Paso county, commanding him to attach the goods of the defendant in that county. There would then have been two writs, as distinct and separate from each other as if they had been issued in different causes; and the order of the court directing the erasure of the word "Pueblo" and the substitution of the word "El Paso," simply authorized the conversion of one writ into another and different one,—in other words, the making of a new writ, which might have been issued at the same time with the first, and which was as distinct from the first as if it had been so issued.

The effect of the order of the court, even if we may regard the erasure and substitution which it directed as having been actually made, was, not to cure a defect or insufficiency in the original writ, but to call into existence a new writ, which, insomuch as it was a new writ, could be operative only from the time when it was made. If a new writ could, in such manner, be validly originated, it would protect the officer to whom it was directed as to his acts afterwards done in virtue of its authority; but it would afford justification for no previous act.

We have been referred to a number of authorities in alleged support of the defendant's position; but none of them deals with the question here presented. We have found no case, and we know of none, wherein the taking of property, wrongful when the act was done, was afterwards adjudged lawful, either by reason of the issuance of a supplemental writ, or by the conversion of one writ into another. In *Chadwick v. Divol*, 12 Vt. 499, the amendment of a writ directed to the sheriff of one county, and served by the sheriff of another, was allowed; but the writ was a summons, and its service involved no interference with property. In its opinion, the court said: "We

are inclined to sustain the amendment so far as to prevent an abatement of the suit, without deciding on its effect in legalizing the doings of the officer for collateral purposes." In *Campbell v. Stiles,* 9 Mass. 217, the writ was a writ of review, returnable to the supreme judicial court, which had been directed to the sheriff of Franklin county, and served by the sheriff of Hampden county. The court ordered it amended, saying: "This is a judicial writ, and the erroneous direction is a misprision of our own clerk. Judicial writs are more absolutely under the control of the court than original writs." The service of that writ, as in the case immediately preceding, did not disturb the possession of property or invade any personal right. *Hearsey v. Bradbury,* 9 Mass. 95; *Moss v. Thomson,* 17 Mo. 405; *Smets v. Weathersbee,* R. M. Charl. 537; *Telford v. Coggins,* 76 Ga. 683, were cases in which the misdirection amended was apparent on the face of the writ. The case of *Archibald v. Thompson,* 2 Colo. 388, is particularly relied on for the appellee. That was an action of trespass brought by Archibald against Thompson for an alleged wrongful seizure by the latter of goods belonging to the former. The defendant justified under a writ of attachment. The writ was defective in having been made returnable to the wrong term of court. It was held that the writ might have been amended, and that being voidable merely and not void, it could not be attacked collaterally. In the course of its opinion, the court, quoting from *Potter v. Smith,* 7 R. I. 55, said: "These amendments are in the discretion of the court, and that discretion has been exercised at different times, and amendments allowed as to all other requisites of a writ; as to the signature of the clerk; the direction to the officer for service; the title of the writ; the statement of the cause of action; the time and place of appearance;

and all upon the ground that they were irregularities of process or mere omissions of the clerk." It is to the statement that amendments have been allowed as to the direction to the officer for service, that our attention is specifically directed. That statement is incontrovertible. We have noticed several cases in which amendment as to direction for service was approved. But from the opinion in that case it is clear that the court had in mind only, defects which consisted of "irregularities of process or mere omissions of the clerk," appearing on the face of the writ. It is therefore not an authority upon the question before us.

The original writ of attachment in this case showed no irregularity, omission or other defect, nor was it attacked collaterally, or at all. Its validity and regularity were conceded, but it was denied that it afforded justification for the defendant's act. And it was not upon the ground of defect that the court ordered it remodeled. The condition upon which, by the code provision, a writ of attachment might be amended, did not exist. The alteration ordered by the court was not an amendment within the legal purport of the term. It was a making use of material constituting the old writ in the construction of a new one. But the new writ, even if its validity may be conceded, could afford no protection against the consequences of a wrong already committed. It was error to receive the writ in evidence. The judgment must be reversed.                                *Reversed.*