# COOS,

## JANUARY TERM, A. D. 1860.

---

### RUSSELL *v.* DYER.

A failure to comply with any of the substantial requirements of the statute providing for the appraisal or sale of a debtor's lands on execution, will avoid the levy.

An unincorporated place, if inhabited, and if the inhabitants are required to pay taxes, is a town ; but not, if it is taxed and not inhabited.

The words, "public place," must be construed to mean such places as, in comparison with others in the same town, are those where the inhabitants and others most frequently meet or resort, or have occasion to be, so that a notice there would for that reason be most likely to be seen.

The character of a town, and the situation and use of the place, and the amount of resort to it, if disputed, are matters of fact for a jury. But if the facts are apparent, it is a question of law what is a public place.

Where the statute requires notice of a sale to be posted up in two of the most public places in the town in which the property is situated, and the land is situated in a town which has but one public place, or in a place not incorporated nor inhabited, the statute is inoperative, and no valid levy can be made.

A grantee, under a conveyance fraudulent against creditors, may take advantage of any defects in a levy made by such a creditor upon the property.

THIS is an action on the case, brought to recover the value of the White Mountain House, in Carroll, owned by the plaintiff, as he alleged, and burned by the defendants on the 29th day of April, 1853, while they were wrongfully in the possession thereof.

---
Russell *v.* Dyer. [1]
---

The defence was, that at the time the house was consumed, the defendant, Dyer, was the owner of the premises.

The plaintiff acquired his title by a deed from one D. Burnham, dated August 21, 1844. Before that time Dyer had commenced a suit against Burnham and attached said premises, then in Nash and Sawyer's Location, an unincorporated place. At the May term, 1848, in Carroll county, Dyer recovered judgment, and on the 14th of June, 1848, caused his execution in said suit to be levied upon said premises. At the same term, Dyer recovered judgment in another suit against said Burnham, and took out execution thereon, and on the 20th day of June, 1848, caused the right of redemption of said Burnham in said premises to be sold thereon, which was purchased by said Dyer. The sale was of the right to redeem the premises from a levy in favor of *Isaac Dyer* v. *Daniel Burnham* for $4,979.11, made on the 12th of June, 1848 — the date being wrong. Within the time of redemption the plaintiff tendered to, and left with said Dyer, money sufficient to pay the amount of said levy, costs, and interest, which Dyer refused to accept. The plaintiff claimed that Dyer could not hold any thing by virtue of said sale of the right to redeem, for the reason that, in 1848, Burnham had no such right in said premises, having deeded them to the plaintiff in 1844.

The former of said executions was returned fully satisfied by a levy upon three separate parcels of land, to wit, a part of the Rosebrook farm, and the Davis lot, both then in Nash and Sawyer's Location, an unincorporated place, and Crawford's Purchase, an unincorporated and uninhabited place. The three parcels of land were appraised separately, and set off on said execution. The plaintiff claimed that there was no law within the State authorizing the sale of a right of redemption in an unincorporated and uninhabited place, and that for this reason the

Russell *v.* Dyer.

sale was void as to the Crawford's Purchase, and that the sale of the rights of redeeming said three tracts being made entire and at once, the sale was void as to the whole.

There was but one notice of sale posted in Nash and Sawyer's Location, and none in Crawford's Purchase, there being, as was said by the defendants, but one public place in the former and none in the latter, but these facts did not appear by the officer's return ; and for this reason the plaintiff objected that said levy and sale of the right to redeem passed no title to Dyer.

There was evidence submitted to the jury tending to show that D. Burnham's deed to the plaintiff was fraudulent as to his creditors. Many exceptions were taken in the course of the trial, which are omitted, as well as the arguments in relation to them, because the decision did not turn upon them.

The jury found a verdict for the defendants, which the plaintiff moved to set aside, and for a new trial.

*Flint & Bryant,* for the plaintiff.

The verdict should be set aside, because the pretended title of the defendants, upon which it was based, is wholly invalid and void.

There is no law authorizing the sale of an equity of redemption, except *in towns.* Rev. Stat., ch. 196, secs. 2 and 4. Nash and Sawyer's Location, containing inhabitants, comes within the definition of a town. *Bow* v. *Allenstown,* 34 N. H. 374; Rev. Stat., ch. 1, secs. 4 and 5. But Crawford's Purchase being uninhabited seems not to be embraced in that term, and the sale of the equity in it is unauthorized and void. The debtor, or the one having his title, could not redeem the land in Nash and Sawyer's Location without paying the price of an equity illegally sold.

The sale of separate equities should be made separately ; and these three equities, being sold together, the sale was

void. *Fletcher* v. *Stone*, 3 Pick. 250. Russell, having the right to redeem, can take this exception and avoid the sale. *Russell* v. *Fabyan*, 34 N. H. 218, 227, 228. These three parcels of land were set off and appraised severally at the sums, $100, $200, $4,679.11; and all three equities sold together for $490. Such a sale is unjust and oppressive. If valid, the debtor could not redeem the parcel worth $100 without paying the $490 also. These equities were of lands in places as separate and distinct as two different towns, and could not be lawfully sold together at a single sale. Rev. Stat., ch. 196, secs. 2 and 4; *Grosvenor* v. *Little*, 7 Gr. 376. One notice of the sale only was posted in Nash and Sawyer's Location, and none in Crawford's Purchase. If there are in the town no *public places* within the definition applicable to large towns and cities [*Tidd* v. *Smith*, 3 N. H. 178], the notices should be posted according to the statute, " at two of *the most public places* in the town," such as they are.

*F. O. J. Smith*, of Maine, and *Benton & Ray*, for the defendants.

The section of the Revised Statutes cited (chapter 196, sections 2 and 4) is qualified by section 4 of chapter 1 of the same statute, where the word *town* is defined to embrace any place where the inhabitants are required to pay a tax.

As a further rule of construction, Lord *Holt* says, in *Archer* v. *Robenham*, 11 Mod. 161: "In doubtful cases we may enlarge the construction of acts of parliament, according to the reason and sense of the lawmaker expressed in other parts of the act, by considering the frame and design of the whole." So this court, in *Burnham* v. *Aiken*, 6 N. H. 325, say, "it is not uncommon to bring cases which are not within the letter, within the rule which the statute prescribes." Thus the statute of 1791 in terms made only lands and tenements belonging to any person in fee-simple

liable to be taken on execution, yet all less estates were held to be within the statute.  *Pritchard* v. *Brown*, 4 N. H. 402, is to the same point.

It was in the spirit, if not in view of the rules of Lord *Holt*, and of this court, that the court, in *Wells* v. *Burbank*, Coös county, August term, 1845, held, that notice of a tax sale of lands in the township of Success, being an unincorporated place, and only a grant, need not be posted up therein, as if it had been an unorganized town.  In the same case they held that a grant of land is not an incorporated place.  The law does not provide for posting notices in an unincorporated place, as the plaintiff admits. But in this case notices were posted wherever the law provides.  But the law does say an inhabited place *is* a *town*. Nash and Sawyer's Location, though only a grant, and therefore not incorporated, as the court say, in *Wells* v. *Burbank*, was inhabited, and was a town within the meaning of the statute. (ch. 1, sec. 4.)  Nash and Sawyer's Location, not being incorporated, and Crawford's Purchase, adjoining, not being incorporated, for all legal intendments both tracts were as one place.  The private grant of one tract to one party, and of the other tract to another party, created in law no political distinction of one from the other.  Neither, by the operation of such grant, became surrounded with any particular rights of government. These grants were but the demarcation of private rights and of property interests alone.  Then, in contemplation of law, the inhabitancy of either was the inhabitancy of both, and the inhabitancy of either brought both within the clear definition of a single town prescribed in chapter 1, section 4 of the statute, imparting to both collectively all the political attributes contemplated by that statute, and other statutes pertaining to unincorporated places, making them *pro hac vice* a town.  The notice, then, posted up in Nash and Sawyer's Location, operated legally for a notice in Crawford's Purchase.  And if two notices in two

public places had been posted in either tract, can there be any doubt that they would in law have been tantamount to and sufficient for two notices in *each* tract? The only point to be considered is, will a single notice, posted up in an unincorporated but inhabited township, be sufficient to uphold the title of a levy, when it appears by the officer's sworn return that only one public place could be found therein? The court say, in *Wells* v. *Burbank*, that a required statute notice is not necessary to be posted up in an uninhabited place, upon the principle that the law does not require impossibilities. And upon this principle, if the place be inhabited, with but one public place, answering to the two which the law requires, existing there, a notice posted at such public place would be sufficient; to do more is impossible. If this were not so, the whole design of the law would be thwarted, and the law itself rendered nugatory.

Under the statute of Maine, requiring that in making a levy on real estate the officer shall duly notify the debtor, if he be living in the county, it was doubted by the court, in case the debtor could not be found in the county, whether it was necessary for the officer to leave notice at the debtor's last and usual place of abode, or to give any notice of the extent at all. *Buck* v. *Hardy*, 6 Gr. 162. In further elucidation of the doctrine, that the equivalents of the design of the statute being complied with, when the fulfillment of the exact words of it is impossible, the court in Maine has holden that the appointment of an appraiser by the debtor's wife, in the debtor's absence from the State, was sufficient. *Russell* v. *Hook*, 4 Gr. 372.

Section 12, of chapter 196 of the Revised Statutes, is in these words: "The right of any debtor to redeem any right or interest in real estate may be taken in execution, and sold at auction." Section 1, of chapter 195 of the Revised Statutes, reads: "*All real estate* may be taken on

execution," &c.   We contend that this broad, general language of the statute, applies to all real estate, wherever situated, within the geographical boundaries of the State.

Were there a necessity for it, we might perhaps sustain the position, that if the laws of the State are defective in prescribing a rule for the appropriation of the debtor's lands to the payment of his just debts, in any of the unorganized and uninhabited places of the State, a levy upon them would be upheld at common law, by virtue of the statute of 5 George II., entitled "An act for the more easy recovery of debts in His Majesty's Plantations and Colonies in America."   The court say, in *Pritchard* v. *Brown,* 4 N. H. 403, that some of the provisions of that act are still in force in this State.

As to the separate sale of separate equities, the case of *Fletcher* v. *Stone*, 2 Pick. 250, does not support the necessities of the plaintiff's case.   That was where distinct rights of redemption of distinct parcels of mortgaged lands belonging to the debtor were sold jointly on execution ; and the court held it to be irregular as to the debtor, but not as to a stranger.   Now a fraudulent grantee acquires no more rights than a stranger, and so he cannot do what the honest claimant may do.   In this view the case is an authority for us, and not for the plaintiff.   In that case the debtor's rights sold were *separate rights, dependent upon separate mortgages created separately,* and so he must have a right to redeem them separately, or each right might be lost.   But a stranger, or a fraudulent grantee against a creditor, would have no right to redeem, either jointly or severally.  · Hence the decision.

When the debtor's lands in fee are set off at one and at the same time to satisfy the same execution, although in separate parcels, the necessity for such a separate redemption does not intervene.   No separate rights of redemption are created.   Hence in *Barnard* v. *Fisher*, 7 Mass. 71, the court decide, (1.) That it is not necessary to appraise

separate lots of the same debtor separately; (2.) That it is doubtful whether he could redeem *one* lot without redeeming the whole. In *Atherton* v. *Jones*, 1 N. H. 263, note, the court expressly recognize not only the principal point in *Barnard* v. *Fisher*, but also the one there left in doubt, viz. : that a debtor has not the right to redeem, separately, different parcels of land set off on execution. This is reäffirmed in *Burnham* v. *Aiken*, 6. N. H. 324. The case of *Atherton* v. *Jones*, it is said, has reference to the statute of 1791, which has been repealed, and the statute now in force, passed July 4, 1829, will bear no such construction. But the court, in *Burnham* v. *Aiken*, distinctly decide the contrary, and say that the general rule intended to be established is the same in both statutes. So in *Bond* v. *Bond*, 2 Pick. 385, the court uphold the same doctrine, and point out the palpable practical injustice that would operate upon the creditor, if the contrary rule were recognized; as did the court in this State in *Burnham* v. *Aiken*. This doctrine is also maintained in *Foss* v. *Stickney*, 5 Me. 390, with the addition that it does not change the legal result, if the appraisers make a separate estimate of the different parcels taken. Nothing, then, can be more clearly established upon authority than the position that, although a creditor has levied upon sepate parcels of land, and each parcel has been appraised at a separate value, but one inseparable right of redemption is created by the proceedings, in the debtor, and that right must be sold as a unit, or the sale would be of no practical use to the equity creditor against the levy creditor, as the latter would not be bound to permit the equity creditor, any more than their common debtor, to redeem a fractional part of the lands set off.

Our answer to this is a full one to the next objection. The case cited by the plaintiff, *Grosvenor* v. *Little*, 7 Gr. 376, has no applicability. That was where a defect of the statute notice existed. Had it been otherwise, there

is no intimation of the court that the sale of the equity, although of lands situated in separate towns, would not have been completely valid. The argument that "if there are no public places, within the definition applicable to large towns and cities, the notices should be posted according to the statute, at two of the most public places in the town such as they are," is clearly a *non sequitur*. The statute no where says, "if you cannot do as the statute directs, do something else, and it shall be valid." But where the law cannot be complied with, because of the impossibility of the thing, it does not require you to provide a substitute. It is true, that in the case at bar, the officer did all that was possible to be done, viz., posted his notice of the sale at the only public place which existed in either Nash and Sawyer's Location or Crawford's Purchase; and he did, to make sure of all possible notoriety, put up another notice in the adjoining town of Carroll, at the nearest public place to the lands levied upon, except the one in Nash and Sawyer's Location, where the other notice was posted, and still another at Lancaster, the shire town of the county, beside advertising it in the county newspaper. The notices in Carroll and Lancaster were perhaps all gratuitous, neither strengthening nor diminishing the validity of the sale, except that they show the *quo animo* of the officer, and of the creditor whom he represented, to leave no reasonable practical thing undone to give the debtor notice.

It is conclusive against the plaintiff, as to all the objections to the defendant's levy, that the verdict of the jury establishes his deed to have been fraudulent against the creditors of his grantor. See *Buck* v. *Hardy*, 6 Gr. 162. In *Crafts* v. *Ford*, 21 Me. 417, the court decided this point absolutely against the fraudulent grantee. In *Gibson* v. *Bailey*, 9 N. H. 177, this court maintains, in accordance with the above doctrine in the Maine cases, that only a *bonâ fide* grantee can object to amendments of

defects in proceedings for the transfer of title between original parties. The plaintiff does not stand as an innocent purchaser. Before his purchase he knew, or was bound on inquiry to know, of Dyer's attachment of the property. This is a most important doctrine to uphold for the sake of morality in the transfer of titles among men.

BELL, C. J.* This case was very carefully investigated by the late Justice Sawyer, to whose labors I am indebted for most of the views presented. In some other respects his opinion has been modified.

In *Russell* v. *Fabyan*, 34 N. H. 218, it was held that the sale of the right of redemption, on Dyer's second judgment, did not exclude the plaintiff, as assignee of Burnham, from the right to redeem the premises from the extent under the first judgment, notwithstanding the sale might be held to pass the title, as against the prior deed from Burnham to the plaintiff, because of the fraudulent character of that deed as to creditors. It was, therefore, held that the tender by the plaintiff to Dyer extinguished the title acquired by the extent under the first judgment. If, at the time of the destruction of the buildings, Dyer was the owner, it must have been under the sale of the right of redemption on his second judgment. The return is of a sale of the right to redeem the premises from the levy of an execution in favor of Dyer against Burnham, for the sum of $4,979.11. In these particulars the extent under the first judgment is correctly described, but the return erroneously sets forth that the levy was made on the 12th instead of the 14th of June. This error is immaterial, as sufficient appears upon the return to make it certain that this is the levy referred to ; and if it were not so, it does not appear that any other lien or incumbrance

* Judges BELLOWS and FOWLER did not sit.

Russell *v.* Dyer.

subsisted upon the property, out of which a right of redemption could arise.

Various exceptions are taken to the sale, some of which are founded upon the nature of the right of redemption sold, as one arising from the extent, and others are based upon the alleged want of proper notice of the sale. It will be necessary, for the decision of the cause, to examine those only of the latter class. The objections taken to the legality of the extent under the first judgment may be disregarded in the consideration of the case, as it may be assumed that the extent under the first judgment was valid, so far as to raise a right of redemption, which passed by the sale under the second judgment, provided that is found to have been conducted with all formalities required by law, and if the defendant can maintain the sale against the objections which arise from want of proper notice of it, he has title to the premises. On the other hand, if he fails to maintain that sale as legal, because of the want of proper notice, he fails to make out that he was the owner of the premises at the time of the loss of the buildings, and all other questions presented by the case become immaterial.

The statute, under the authority of which the sale was made, requires notice of the time and place of sale to be given to the debtor, or left at his usual place of abode, if he resides in the county, or within twenty miles of the property; and if not, to be published in some newspaper printed in the vicinity, and also a like notice to be posted up at two of the most public places in the town in which the property is situated. Rev. Stat., ch. 196, secs. 2, 3.

No doctrine, perhaps, has received more universal assent than that in disposing of a debtor's lands by compulsory proceedings under a statute for the payment of his debts, the course prescribed is to be strictly followed. A failure to comply with any of the substantial requirements of the statute renders the proceedings void, and leaves his

title to the land unaffected. *Whittier* v. *Varney*, 10 N. H. 296; *Williams* v. *Amory*, 14 Mass. 20; *Benson* v. *Smith*, 42 Me. 414.

In a matter so essential to the fairness and regularity of a sale at public auction as proper notice of it, any construction, which would dispense in any case with the statutory provision requiring it, is clearly inadmissible. Nor can any other than the statute notice be substituted for it. The legislature having declared what notice shall be given, have made this essential. The debtor, and all others interested in the proceedings, may be supposed to look for the notices of the sale, at the places and in the mode specified by the statute; and they can have no reason to understand, in the absence of any statute provision to that effect, that if places, such as are designated by the statute do not exist, or the mode of publication required by it is impracticable, similar places, in some adjoining town, or in the shire town of the county, or some other mode of publication, as near as may be, may be selected, at the pleasure of the officer, and substituted for those designated. If proceedings of this essential character cannot be had in conformity to the statute, in reference to lands situated in unincorporated or uninhabited places, then it must be understood that the legislature did not intend to subject them to the operation of the act, and the authority under the statute to sell a debtor's right of redemption does not extend to lands so situated.

The word "town," as used in the statute on this subject, in accordance with the rule of construction prescribed in the Revised Statutes (ch. 1, sec. 4), may be held to mean a place, the inhabitants of which are required to pay a tax. It can admit of no doubt that an unincorporated place, like Nash & Sawyer's Location, as it was at the time of the sale, having inhabitants and established territorial limits, corresponding in extent to the general territorial character of towns, and included among towns in the gen-

Russell *v.* Dyer.

eral law for the apportionment of the public taxes, and required by that law to pay its share of the State tax, must be a place, the inhabitants of which are required to pay a tax, within the meaning of the section establishing this rule of construction, and therefore to be considered a town, within the meaning of the act prescribing the mode of proceeding in the sale of an equity or right of redemption on execution. Both Nash & Sawyer's Location and Crawford's Purchase have always been included in the apportionment acts, since 1840 at least. They have established and recognized boundaries, and in the extent of territory which they embrace they have the general character of towns. The former, at the time of this sale, had inhabitants, and however Crawford's Purchase may be viewed on this point, Nash & Sawyer's Location may be considered as included in the meaning of a statute which speaks of towns, equally with all other unincorporated but inhabited places, unless upon some other ground it appears that it cannot be so included, because the nature and subject matter of the act, or its particular provisions, are inconsistent with such a construction.

The statute which prescribes the proceedings to be had in the sale of an equity of redemption, in declaring that notices of the sale shall be posted in two of the most public places of the town in which the land is situated, must be held to have application to this sale ; and if the provisions of the act are found to be inconsistent with the application of the statute to the sale of an equity in lands situated in such place, and any essential requirement of the statute cannot be complied with in the sale of such equity, it cannot be dispensed with, nor the sale held valid ; and because the essential requirement of the statute cannot be met in such case, it must be considered that, therefore, the legislature did not intend to include such case within the statute authority for the sale, and

consequently it must be held void, as one not authorized by law.

Upon this point, it has been urged in the argument, that Nash & Sawyer's Location, at the time of giving notice of the sale, had but one public place, within the meaning of the statute, at which the notice could be posted, and being posted there, this was a substantial compliance with the requirements of the statute, that ample notice of the sale was thereby given to the inhabitants of the place, and the object of the statute accomplished.

If the expression used in the act, "the most public places," is to be considered as having a legal, technical signification, implying a building appropriated to some particular use or purpose, which in law renders it a public place, when, if appropriated to some different use, it would not in law be so regarded; a meaning such that, whether it is or is not a public place, is purely a question of law, to be determined from its nature and use, then it is clear that there may be land subject to an equity of redemption, situated in a place the inhabitants of which are required to pay a tax, and even in an incorporated town, which has in it no public place in this legal, technical sense, where notice of the sale can be posted agreeably to the requirements of the statute.

If, however, the expression is used not in this technical sense, but as meaning only that notices shall be posted in two places which are most open to public observation, and where they would be most likely to attract attention—a question of fact only being involved, whenever inquiry is made, whether they were posted in the most public places—then it is equally clear that in every town or place, inhabited or uninhabited, which, upon any view of the statute, may be called a town, two such places may be found; two of the places most open to public observation in the town, and best situated as places for posting the notices to give public information of the sale.

Neither of these views are regarded by the court as correct. In *Tidd* v. *Smith*, 3 N. H. 178, the question arose, what was a public place within the meaning of the act for taxing non-resident lands, which provided that notice of sale should be posted for three weeks in some public place in the town. The notice was posted in a house, then, and for some days afterward, kept as a public inn, and from that time used only as a shoemaker's shop. It was there held that the question, whether a particular place is to be considered a public place within the meaning of the statute, is a question partly of fact and partly of law. The nature and situation of the places, and the uses to which they are applied, are matters of fact, to be settled by a jury. But when these are settled, whether the place is to be considered a public place within the intent of the statute, is purely a question of law. And the facts being of common knowledge to every body, the court were of opinion that a shoemaker's shop, under the circumstances of that case, could not be deemed a public place within the meaning of that statute. The question there arose in the town of Deerfield, one of the oldest incorporated towns, having as early as 1800 a population of nearly 2000, and situated in a densely peopled portion of the State, and having in 1823, two years before this decision, two meeting-houses, eight taverns, six stores and two post-offices. Farmer & Moore's Gazetteer 50 ; N. H. Register 1823.

In towns and places where no post-office, tavern, house of public worship, or other place usually regarded as a public place, exists, the words "public place" must be construed to mean such places, as, in comparison with other places in the same town, are the places where the inhabitants and others most frequently meet, or resort, or have occasion to be, so that a notice posted there would for that reason be likely to meet public view and attract observation. The intention of the statute, which requires

notices to be posted, is obviously to give publicity to the sale, and to invite purchasers. The tavern, retail store, house of worship, or other place usually regarded as public, are considered such because applied to purposes which make them places of public resort, and they thereby become most open to public observation. In cities and large towns, some taverns and retail stores, like most mechanics' shops, may be of little or no public resort, and some houses of worship may be very retired, or so inclosed as to be inaccessible, except when opened for public use, and such buildings could, in no proper sense, be regarded as public, while other buildings designed for public use, as post-offices, railroad depots and the like, might become the places of most common resort.

In new and thinly settled towns and places, there may be neither post-office, church, tavern, or store; and the school-house, mill, or mechanic's shop may be the places of most public resort, and may be properly regarded as the most public places. And the same remark may, under proper circumstances, apply to the bridge, or the guide-board, or the box by the road-side, where newspapers are left for subscribers, and to posts and boards erected by public authority for posting notices, where the evidence shows that no more public places can be found.

The return of the officer of the sale on execution is conclusive as to all his proceedings material and proper to be returned, and upon which the title under the sale is dependent; and where he distinctly returns that the notices were posted at certain described places, being two of the most public places, the return could not be impeached to invalidate the sale.

As then it appears that part of the lands, the right to redeem which was sold, were situated in a town where there was but one public place, and notice was posted in but one place, and another part was situate in a place not

incorporated nor inhabited, the statute must be held inoperative as to those places, and the levy and sale void.

It was argued that though the sale might be void under the statute, still it could be upheld by virtue of the statute of 2 Geo. II., referred to and commented upon in *Pritchard* v. *Brown*. It is sufficient on this point to say, that the act provides only for extending executions upon the lands of debtors in the provinces, in the same manner as real estate was liable by the law of England to be taken in satisfaction of debts due by bond or other specialty, and no where speaks of sales of the land or of the right in equity to redeem it.

It was also contended that the plaintiff, being a fraudulent grantee of the debtor as to his creditors, is not in a position to except to the validity of the proceedings in this case. The doctrine that one who takes by a deed, fraudulent as to the creditors of his grantor, cannot except to the validity of a creditor's extent upon the land, has never been admitted in this State; *Whittier* v. *Varney*, 10 N. H. 291; nor does it follow upon principle from the doctrine that the creditor of the grantor may treat the land as belonging to his debtor notwithstanding such fraudulent conveyance. He may extend upon the land, or levy upon the equity of redemption, precisely as though the fraudulent conveyance had not been made. But if his extent or levy is void, by reason of a failure to comply with the requirements of the statute, he acquires no rights as against the grantee under the fraudulent conveyance which he would not have acquired by the defective extent or levy against the debtor, if the fraudulent conveyance had never been made. Whenever, in order to make out his title to the land, he introduces his levy, he fails, if that appears to be defective, whoever may be the adverse party. The debtor himself may object, and the fraudulent grantee, having his interest, stands in no

worse position in this respect, because he has taken a conveyance which his grantor's creditors may disregard.

Upon these views the sale of the equity on Dyer's second judgment must be held void, and this conclusion renders it unnecessary to consider the other questions in the case.

*Verdict set aside and new trial granted.*